[No. 7667–5–II.   Division Two.   December 8, 1986.]

HELEN MCCARTHY, *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

·   *Stephen C. Way* and *Miles, Way, Caldart & Humphrey,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Gregory F. Brunson, Assistant,* for respondent.

ALEXANDER, J.—Helen McCarthy appeals an order of the Superior Court dismissing her cause of action against the State of Washington Department of Social and Health Services (DSHS) for personal injuries. We hold that McCarthy has stated a claim upon which relief can be granted, and

conclude, therefore, that the trial court erred in granting the motion.

The brief record before us reveals that shortly after McCarthy commenced this action by filing a complaint in Thurston County Superior Court, DSHS moved for dismissal. DSHS's motion preceded the filing of a responsive pleading, and it was unaccompanied by any supporting affidavits or documents. The motion was grounded solely on DSHS's contention that McCarthy had failed "to state a claim upon which relief can be granted". CR 12(b)(6). The trial court granted the motion and dismissed McCarthy's complaint.

The broad issue on appeal is whether the trial court erred in dismissing McCarthy's cause of action pursuant to CR 12(b)(6). A CR 12(b)(6) motion "must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief. . . ." *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 961, 577 P.2d 580 (1978). In ruling on a CR 12(b)(6) motion, no matter outside the pleadings may be considered. *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 545 P.2d 13 (1975). The reviewing court must accept the factual allegations of the complaint as true. *Corrigal*, 89 Wn.2d at 961.

The allegations in McCarthy's detailed complaint may be summarized as follows: Helen McCarthy was employed as a "Volunteer Program Specialist" by DSHS from February 1970 to December 1980. McCarthy's employment with DSHS required her to work in an office environment in which she was regularly exposed to "cigarette and other kinds of tobacco smoke, . . ." McCarthy advised her DSHS supervisor and an assistant director of DSHS that she was concerned about the effect of the tobacco smoke on her health. Notwithstanding her complaints and the Department's awareness of her "pulmonary problems," the Department negligently failed to provide McCarthy with a safe and healthful place of employment and an office environment reasonably free of tobacco smoke. As a result

of her exposure to tobacco smoke in the office environment, McCarthy developed obstructive lung disease, which became progressively more serious.

McCarthy was advised by her physician that she had developed chronic obstructive pulmonary disease, with "broncho–spasm," and that she had diminished pulmonary function with sensitivity to tobacco smoke. The doctor advised her that the condition was disabling and that she could not perform her duties, unless she was placed in a "clean air environment." DSHS failed to provide such an environment. In December 1980 McCarthy found it necessary to terminate her employment with DSHS. Prior to her employment with DSHS, McCarthy had not experienced any "asthmatic problems [or] obstructive lung disease."

McCarthy further alleged in her complaint that in 1981 she sought industrial insurance benefits for her condition. The Department of Labor and Industries denied her claim. She appealed the Department's decision to the Board of Industrial Insurance Appeals. According to McCarthy's complaint, the Board affirmed the Department's decision, concluding that "plaintiff's pulmonary lung disease was not the result of an industrial injury, *nor did it constitute an occupational disease within the contemplation of the Washington Industrial Insurance Act . . .*" (Italics ours.)[1]

Because we must accept the foregoing factual allegations as true, the narrower issue in this case is whether McCarthy would have a right to relief in a common law cause of action on the facts alleged in her complaint. The essence of McCarthy's complaint is that while she was employed by DSHS she contracted a nonoccupational disease as a result of her employer's negligence. Although nothing in the record provides us with any hint as to the trial court's reason for granting DSHS's motion to dismiss, we assume it was based on its belief that DSHS was immune from liabil-

---

[1] We make no collateral judgment about whether the Board, if it ruled as McCarthy has alleged, was correct in its decision that her disease was *not* an occupational disease. That decision is not properly before us for review.

ity in a common law tort action because McCarthy contracted the disease while employed at DSHS.

DSHS contends that the trial court properly granted the motion to dismiss for the reason that McCarthy's common law action is barred by the exclusive remedy provision of the Industrial Insurance Act, RCW 51.04.010. That section provides:

> The state of Washington, therefore, exercising herein its police and sovereign power, declares that *all phases of the premises are withdrawn from private controversy,* and sure and certain relief for workers, injured in their work, . . . is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; *and to that end all civil actions and civil causes of action for such personal injuries in all jurisdictions of the courts of the state over such causes are hereby abolished,* except as in this title provided.[2]

(Italics ours.)

Thus, if McCarthy's "disease" is within the coverage provisions of the Industrial Insurance Act, her private cause of action against DSHS would be barred. *See West v. Zeibell,* 87 Wn.2d 198, 201, 550 P.2d 522 (1976) (where the court held that the exclusive remedy provisions bar private causes of action for industrial injuries).

■ If, however, McCarthy's disease is not covered by the act, the exclusive remedy provisions of the act should not bar her private cause of action. Generally, the exclusive remedy provisions of an industrial insurance act bar private causes of action only when the *particular disease* is within the coverage provisions of the act. *See Niles v. Marine*

---

[2]Although this section, which has remained unchanged since it was enacted in 1911, does not use the word "disease," but instead uses the words "injured" and "personal injuries," the words "all phases of the premises" appear to be broad enough to include occupational diseases which are covered by the act. Although, no case directly addresses that issue, we note that compensation for diseases is treated the same as compensation for injuries. *See* RCW 51.32.180: "Every worker who suffers disability from an occupational disease . . . shall receive the same compensation . . . as would be paid and provided for a worker *injured or killed* in employment under this title: . . . ." (Italics ours.)

*Colloids, Inc.,* 249 A.2d 277 (Me. 1969); *Perez v. Blumenthal Bros. Chocolate Co.,* 428 Pa. 225, 237 A.2d 227 (1968). As stated in 101 C.J.S. *Workmen's Compensation* § 924:

Where the common–law action for disease is not covered by the workmen's compensation act, it is still retained by the employee; and if the compensation statute does not furnish a remedy for occupational disease the court will presume that the legislature intended to preserve the common–law remedy.

(Footnote omitted.)

The operative fact in establishing the exclusiveness of a worker's compensation remedy is actual coverage, not the election to claim coverage in a particular case. 2 A. Larson, *Workmen's Compensation* § 65.14 (1985). Thus, even if an employee, having a compensable injury or disease, had never applied for workers' compensation, an employee's right to sue his employer under common law would be barred by the existence of a workers' compensation remedy.

It should be noted that Washington's Industrial Insurance Act did not initially provide compensation for industrially caused diseases. *See* 16 Wash. L. Rev. 154 (1941). Prior to coverage being provided for such diseases, our Supreme Court held that an employee allegedly suffering from an occupational disease could maintain a private cause of action for damages against an employer. *Pellerin v. Washington Veneer Co.,* 163 Wash. 555, 559, 2 P.2d 658 (1931) (plaintiff suffering from carbon bisulphide poisoning); *Depre v. Pacific Coast Forge Co.,* 145 Wash. 263, 259 P. 720 (1927) (plaintiff suffered from tuberculosis allegedly caused by gases and vapors). These early Washington cases, thus, appear to be consistent with the general rule that the existence of workers' compensation legislation does not bar rights to sue at common law in jurisdictions where occupational diseases (1) are not covered at all by state industrial insurance, or (2) are not covered by such insurance for the reason that they do not constitute accidental injuries or are not among covered occupational diseases.

Eventually, the Washington Industrial Insurance Act was

amended to include coverage for "occupational diseases." *See* RCW 51.32.180. "Occupational disease" is defined currently in RCW 51.08.140 as follows:

> "Occupational disease" means such disease or infection as arises *naturally and proximately* out of employment under the mandatory or elective adoption provisions of this title.

(Italics ours.) Therefore, in order to come within coverage of the act, a claimant must show not only that his disease arose "proximately" out of the employment, but also that the disease arose "naturally" out of the employment.

The term "naturally" has been defined in *Department of Labor & Indus. v. Kinville,* 35 Wn. App. 80, 88, 664 P.2d 1311 (1983), where the court said that naturally means that a disease must be "peculiar to, or inherent in, his particular occupation." *Kinville,* 35 Wn. App. at 87. A disease need not be unique to be peculiar to the employment, but the claimant must show that the job requirements exposed the claimant to a greater risk of contracting the disease than would other types of employment or nonemployment life. *Kinville,* 35 Wn. App. at 89. The court in *Kinville* quoted with approval from *Harmon v. Republic Aviation Corp.,* 298 N.Y. 285, 288, 82 N.E.2d 785 (1948):

> An ailment does not become an occupational disease simply because it is contracted on the employer's premises. It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort. . . .

*Kinville,* 35 Wn. App. at 88.[3] *See also Polson Logging Co. v. Kelly,* 195 Wash. 167, 171, 80 P.2d 412 (1938) (where the court defined occupational disease as "a disease, or diseased

---

[3]*But see, contra, Dennis v. Department of Labor & Indus.,* 44 Wn. App. 423, 722 P.2d 1317 (1986) (where Division One expressed the view that the "naturally" requirement in RCW 51.08.140 means simply that a claimant must show the logical relationship of the disease–based disability to the work or attendant conditions).

condition, which is peculiar to a given occupation and brought about by exposure to certain harmful conditions which are constantly present, and to which all workmen in the occupation are continually exposed.").

In our judgment, if McCarthy could show that her disease was not an occupational disease, and thus not within the coverage provisions of the act, her private cause of action should not be barred under the exclusive remedy provisions of RCW 51.32.010. In coming to this conclusion, we emphasize that a fundamental distinction must be drawn between a disease which does not come within coverage provisions of the act, and a disease which is covered but for which under the facts of the particular case, no compensation is payable. In the former class are cases in which (1) the employment relation did not exist, (2) the claimant or his employer was within an excluded category, or (3) there was no disease arising out of the employment. 2 A. Larson, *Workmen's Compensation* § 65.10 (1986). For example, if it is shown that McCarthy's disease does not come within the definition of occupational disease because it is not a disease peculiar to, or inherent in, the industry and could not, therefore, arise "naturally" out of the conditions of the employment, then McCarthy's common law cause of action would not be barred. On the other hand, if it was shown in a common law action that McCarthy's disease meets the definition of an "occupational disease," but that McCarthy simply failed to meet her burden of proof before the Department and the Board, then her cause of action would be barred by the exclusive remedy provisions of RCW 51.04.010.

In a case similar to the case at bar, the Supreme Court of Pennsylvania held that an employee's common law action for damages against his employer was not barred by the Pennsylvania Occupational Disease Act. *Perez v. Blumenthal Bros. Chocolate Co., supra.* In *Perez,* the employee had previously filed a claim under the Pennsylvania act, seeking compensation for his emphysema. The claim was

resisted by the employer. *Perez,* at 227.[4] The Pennsylvania Occupational Disease Act included compensation for diseases including:

> (n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are *peculiar to the industry* or occupation, and (3) which are not common to the general population.

(Italics ours.) *Perez,* at 227 (quoting § 108, 77 Pa. Stat. § 1208). Perez claimed in his civil suit that he was exposed to heavy dust produced in the grinding operation of the chocolate factory. *Perez,* at 226. The court held that Perez's claim was not compensable under the Pennsylvania Occupational Disease Act because Perez's emphysema was not "peculiar to the industry" of chocolate manufacturing and because the disease was "common to the general population." *Perez,* at 228.

Although the employer, the chocolate factory, argued that the Pennsylvania Occupational Disease Act provided Perez's exclusive remedy, the Pennsylvania Supreme Court disagreed:

> In view of the fact that [Perez] offered competent medical testimony that pulmonary emphysema is not "peculiar to the industry" of chocolate manufacturing and is "common to the general population", we conclude, as did the court below, that [Perez's] condition is not covered by the Act.

The court thus affirmed the trial court's allowance of the common law action. *Perez,* at 228.

Here, McCarthy was not given an opportunity at the trial court level to show that her disease was not covered by RCW 51.08.140. The trial court simply dismissed the complaint after presumably examining the complaint and observing that McCarthy contracted the disease on the job. The dismissal, at the very least, was premature. After reviewing the complaint ourselves, we believe that McCarthy might be able to produce competent medical evi-

---

[4]It seems apparent that the employee, Perez, was unsuccessful in his efforts to obtain workers' compensation. However, the opinion does not so state.

dence that her disease was not within the coverage of the act. Indeed, the rather detailed and specific factual averments in McCarthy's complaint appear to be consistent with her allegation that DSHS was negligent and that the disease she contracted because of such negligence was not peculiar to or inherent in her occupation at DSHS. If she can prove those allegations, she has a common law action for negligence. We conclude that the trial court erred in dismissing the complaint.

If we were to hold otherwise, McCarthy would have effectively fallen into a "crack" between the state industrial insurance system and the state's tort system. Persons who are injured by the negligent acts of others should have a remedy against the tortfeasor unless their cause of action is preempted by a statutory scheme, such as workers' compensation. If what McCarthy states in her complaint is true, she is not covered by the act, and yet DSHS would see her cause of action preempted by the act. This would not be a just result. We, therefore, reverse the decision of the trial court and remand the case to the trial court for proceedings not inconsistent with this opinion.

Reversed and remanded.

WORSWICK, C.J., and PETRICH, J., concur.

Reconsideration denied January 6, 1987.

Review granted by Supreme Court March 31, 1987.