[No. 19022-9-I.   Division One.   December 21, 1987.]

HOWARD DEETER, ET AL, *Appellants,* v. SAFEWAY STORES, INC., ET AL, *Respondents.*

*William S. Bailey* and *Schroeter, Goldmark & Bender,* for appellants.

*Ralph C. Pond* and *Lane, Powell, Moss & Miller,* for respondent Safeway Stores.

WEBSTER, J.—Appellants Howard M. and Hermoine Deeter appeal from a judgment of dismissal for lack of subject matter jurisdiction. They brought this suit against respondents Safeway Stores, Inc., and Scott Wetzel Services, Inc. (collectively referred to as Safeway) asserting that respondents engaged in unfair or deceptive claims practices and outrageous conduct in the administration of Mr. Deeter's claim under the Industrial Insurance Act (IIA). The Deeters allege that Safeway's actions over a period of 9 years in both the administrative and appeals processes constituted the tort of outrage separate and apart from IIA claims and created a further cause of action under both the Washington Consumer Protection Act (CPA), and the Washington Insurance Code (the Code). Having determined that the Deeters' claim was properly confined to the IIA, we affirm.

SUBSTANTIVE FACTS

Deeter worked for Safeway Stores, Inc., as a warehouseman and truck driver from 1935 to 1977. On May 24, 1977, he injured his right knee while unloading a frozen food truck. On June 22, 1977, the Department of Labor and Industries entered an order allowing the claim with Safeway Stores, Inc., and benefits were provided. After Deeter's claim was submitted, medical complications developed and, ultimately, his entire right knee had to be removed and replaced with a prosthesis. Safeway Stores, Inc., a self-

insured employer for purposes of workers' compensation under the IIA, engaged Scott Wetzel, Inc., to administer its workers' compensation claims.

Deeter's medical history in association with this case may be summarized as follows: In May 1977, following his injury, Deeter recuperated for about a week and then returned to work until his retirement in July 1977. From May to December of 1977 Deeter was treated by Dr. Den Dulk, the family physician. Dr. Dulk performed three aspirations of Deeter's right knee and placed him on medication.

In 1978 Deeter was treated by three physicians. First, he was referred to Dr. Allen Jackson, an orthopedic surgeon. Dr. Jackson did an arthrogram, an x–ray of the knee into which dye is injected. He also performed an arthrotomy, a surgical technique involving the removal of the medial meniscus. Dr. Jackson continued to observe Deeter throughout the post–operative period. Next, Deeter was examined at Safeway's request by Dr. Frederick Tokarcheck who concluded that additional surgery was not required and recommended closing the claim with a permanent partial disability award. Finally, Dr. Jackson referred Deeter to Dr. James B. Smith, an orthopedist, who recommended a total knee replacement.

In 1979 Deeter's condition worsened. He experienced persistent pain and difficulty when moving his right knee. In January 1979 Safeway referred him to Dr. J. Harold Brown who recommended total knee replacement. Dr. Jackson concurred with Dr. Brown's recommendation. Safeway then authorized Dr. Jackson to perform the total knee replacement. However, in November 1979 Dr. Jackson felt that Deeter's condition was stable and that total knee replacement should not be performed at that time. Dr. Brown then reexamined Deeter and concluded that he was totally disabled and unemployable as a truck driver. Dr. Jackson agreed.

In February 1980 Dr. Jackson indicated to People Systems, Inc., a vocational rehabilitation service retained by

Safeway, that Deeter could do light work as the driver of a van, a private car, or an escort vehicle. In June 1980 Dr. Jackson again recommended a total knee replacement but, because of Deeter's need to take medication, advised against commercial driving. In June 1980 Deeter was examined at Safeway's request by an orthopedic panel that concluded he could perform some types of work and that his claim should be closed with a permanent partial disability rating. In August 1980 Dr. Jackson referred Deeter to Dr. William Gruber who stated that a total knee replacement was necessary.

In January 1981 Dr. Jackson performed a total knee replacement of Deeter's right knee and requested a closing examination. In November 1981 Dr. John McDermott performed the closing examination stating that Deeter had a 40 percent permanent partial disability and that he could not return to work. Safeway then requested People Systems, Inc., to meet with Dr. Jackson to reassess Deeter's vocational prospects. Although Dr. Jackson approved two of the suggested jobs, he added that a 67–year–old man with Deeter's disabilities could not realistically be expected to work again.

In 1982 Deeter continued to have problems with pain. Dr. Jackson noted that a further revision of the knee replacement may be necessary in the future and that Deeter was incapable of resuming any type of work requiring significant physical activity. In March 1982 Deeter requested that Safeway award him a pension based on total disability. In April 1982 a Department disability adjudicator concluded that Deeter had viable job alternatives but that he wished to stay retired and should, therefore, receive a permanent partial disability award and closure of the claim.

Between 1979 and 1982 Safeway Stores, Inc., and Scott Wetzel Services, Inc. (Wetzel) exchanged numerous memoranda concerning Deeter's claim. A summary of these communications follows: First, regarding time loss benefits, in

March 1979 Wetzel recognized the need to pay these benefits, but in April 1980 quit paying them based on Dr. Jackson's opinion that Deeter could return to work. Second, regarding Deeter's vocational prospects, Wetzel advised Safeway Stores, Inc., in February 1980 to create a "light duty job" for Deeter to avoid paying him a life pension. The same recommendation was made in May 1980 and in September 1981. Finally, regarding the pension, in February 1980 a Wetzel claims supervisor stated that unless a suitable area of employment was found for Deeter, he would probably be placed on a pension as a permanently and totally disabled worker. Wetzel's senior vice–president responded that under no circumstances would Wetzel award Deeter a pension and that, instead, a job should be found for him. In November 1980 Wetzel had predicted that Deeter would receive a permanent partial disability award of 50 percent at closure. Thereafter, in April 1982, Wetzel sought closure of the claim with no pension, but left "reserves high" because of the possibility of a pension award. In September 1982 Wetzel engaged a security service to conduct a photographic surveillance activities check of Deeter.

PROCEDURAL HISTORY

A. Administrative Proceedings

On May 4, 1982, the Department closed Deeter's claim with a permanent partial disability award of 40 percent of the amputation value of the right leg at or above the knee joint. Deeter appealed. On May 10, 1982, after the Department entered an order correcting and superseding the May 4, 1982 order, Deeter again appealed. He then filed an application to reopen his claim based upon muscle spasms in his right calf. On February 25, 1983, the Board of Industrial Insurance Appeals remanded the case to the Department with the direction that Safeway be required to provide compensation to Deeter as a totally and permanently disabled worker. The Department complied with this order, placing Deeter on a pension retroactive to May

1, 1982. Safeway appealed to the Department, but review was denied. Safeway then filed a notice of appeal to superior court.

On March 5, 1984, while Safeway's appeal was pending, Deeter filed a second application to reopen his claim based upon chronic pain in his left foot and a painful right knee. After the filing of this application, Safeway's appeal to the superior court was resolved by an agreed order, which required that Deeter's claim remain open for medical treatment and any additional benefits and that Safeway pay Deeter's attorney's fees in connection with the appeal. The Department provided that the amount already paid to Deeter on his pension be considered an advance of any further payment of time loss benefits.

B. Superior Court Proceedings

On February 6, 1985, the Deeters filed a summons and complaint alleging that Safeway failed in good faith to effect the fair and equitable settlement of Deeter's claim; refused to pay the claim without conducting a reasonable investigation; forced the Deeters to institute litigation to recover amounts due; and failed to promptly provide a reasonable explanation for the denial of the claim or for an offer of compromise settlement.

Safeway moved for summary judgment, arguing that Deeter's claim was barred by the exclusive remedy provisions of the IIA, RCW Title 51. The motion was denied, and the case was submitted to arbitration. The Deeters received an arbitration award of $25,000. On February 4, 1986, Safeway was granted a trial de novo on all issues. Before trial Safeway moved to dismiss for lack of subject matter jurisdiction, and the motion was granted. The trial court ruled that the Deeters had failed to establish a prima facie case of an intentional tort by Safeway. The court also dismissed their claims under the CPA and the Code. The Deeters' motion for reconsideration was denied. This appeal timely followed.

INDUSTRIAL INSURANCE ACT

The primary issue in this case is whether the bar to suits for industrial injuries covered under the IIA, RCW Title 51, should extend to the claims administration process. As a general rule the exclusivity provisions of the IIA bar an action against the employer for an injury incurred by the worker in the course of employment.[1] Relevant portions of these provisions follow:

> [A]ll phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault *and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title*; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

(Italics ours.) RCW 51.04.010.

> Each worker injured in the course of his or her employment, or his or her family or dependents in case of death of the worker, shall receive compensation in accordance with this chapter, and, except as in this title otherwise provided, *such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever*: . . .

(Italics ours.) RCW 51.32.010. *See Seattle–First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 242, 588 P.2d 1308 (1978) ("With certain specified exceptions, the [IIA] abolishes judicial jurisdiction over *all* civil actions for personal injuries arising between employees and the employers. . . . In effect, the [IIA] 'immunizes', from judicial jurisdiction, *all* tort actions which are premised upon the 'fault' of the employer vis–a–vis the employee"). (Last italics ours.)

---

[1]The bar is lifted, however, for suits in which the employer is alleged to have deliberately intended to injure the worker. RCW 51.24.020; *Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 753, 696 P.2d 1238 (1985).

In *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 731 P.2d 497 (1987), the court clarified its holding in *Seattle–First*:

> We did not mean to imply in *Seattle–First* that all other types of civil actions between employers and employees were foreclosed. Rather, in referring to "all civil actions," we were discussing civil tort actions "premised upon the 'fault' of the employer vis–a–vis the employee" for workplace injuries compensable under the IIA. *Seattle–First*, 91 Wn.2d at 242.

*Reese*, at 571. Thus, the court held that the exclusive remedy provisions of the IIA do not bar employee actions against the employer for disability discrimination under the Law Against Discrimination, RCW 49.60. *Reese*, at 573; *see also McCarthy v. Department of Social & Health Servs.*, 46 Wn. App. 125, 128, 730 P.2d 681 (1986) (holding that the exclusive remedy provisions of the IIA do not bar a common law negligence action against the employer for a disease contracted in the workplace when it is not covered under the IIA as an "occupational disease"), *review granted*, 108 Wn.2d 1001 (1987); *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 912, 726 P.2d 434 (1986) (holding that the IIA does not bar a tort action against an employer for wrongful termination of employment).

The majority of jurisdictions considering whether an administrative tort claim may be maintained have held that the tort action is barred except in cases of egregious cruelty or venality. 2A A. Larson, *Workmen's Compensation* § 68.34(c) (1987).[2] The rationale advanced is that the Legislature, in passing the workers' compensation laws, anticipated a simple method for resolving disputes in which

---

[2] Among the cases cited by Larson in which the cause of action was held not to lie are the following: *Sample v. Johnson*, 771 F.2d 1335 (9th Cir. 1985) (claimants confined to the penalty provisions of the Longshoremen's and Harbor Workers' Compensation Act (the IIA counterpart for maritime workers)), *cert. denied*, 475 U.S. 1019 (1986); *Goetz v. Aetna Cas. & Sur. Co.*, 710 F.2d 561 (9th Cir. 1983) (exclusiveness of workers' compensation act not in violation of equal protection clause); *Argonaut Ins. Co. v. Superior Court*, 164 Cal. App. 3d 320, 210 Cal. Rptr. 417 (1985) (carrier's refusal to pay for unrecommended surgery reasonable and,

intolerable delay, economic waste, and expense to the worker could be avoided. *Robertson v. Travelers Ins. Co.,* 95 Ill. 2d 441, 448 N.E.2d 866, 870 (1983). In jurisdictions that have upheld the tort action the rationale is that the injury does not arise in the course of employment, that the injury is intended rather than accidental, and that the defendant's conduct went far beyond the bounds of mere delay. *Robertson.*

■■ The gist of the Deeters' argument is that Safeway's conduct over a 9-year period in both the administrative and appeals processes constitutes the tort of outrage, an action separate and apart from the IIA. In *Pifer v. Egger,* 43 Wn. App. 63, 715 P.2d 154 (1986), we considered the tort claim of outrage against an employer and a claims adjuster for acts and omissions allegedly committed during adjustment of an industrial insurance claim. The trial court denied a motion by the defendants on the ground that the IIA is a complete bar to any actions for torts committed during the industrial insurance claims adjustment process.

thus, carrier not liable in tort for suicide of despondent claimant); *Ricard v. Pacific Indem. Co.,* 132 Cal. App. 3d 886, 183 Cal. Rptr. 502 (1982) (claim against insurance carrier for alleged refusal to process and investigate claim must be brought under appropriate penalty provisions of the workers' compensation statute); *Everfield v. State Comp. Ins. Fund,* 115 Cal. App. 3d 15, 171 Cal. Rptr. 164 (1981) (exclusiveness bar not avoided for delay in payment and change in amount paid merely by adding such words as "fraudulent, deceitful, and intentional").

Among those cases in which a separate cause of action was allowed are the following: *Travelers Ins. Co. v. Savio,* 706 P.2d 1258 (Colo. 1985) (exclusivity no bar in claim against insurer who had knowledge of, or reckless disregard for, the fact that no reasonable basis existed for denying the claim); *Young v. Hartford Accident & Indem. Co.,* 303 Md. 182, 492 A.2d 1270 (1985) (tort of intentional infliction of emotional distress allowed where complaint charged carrier with insisting on psychiatric examination with deliberate intent of causing claimant to commit suicide); *McCain v. Northwestern Nat'l Ins. Co.,* 484 So. 2d 1001 (Miss. 1986) (exclusivity no bar where employee's allegation states that employer breached its contractual duty to settle claim); *DeMarco v. Federal Ins. Co.,* 99 A.D.2d 114, 472 N.Y.S.2d 464 (1984) (exclusivity no bar in action against insurer for repeatedly refusing to authorize needed surgery); *Formoso v. Plain Dealer Pub'g Co.,* 18 Ohio St. 3d 138, 480 N.E.2d 426 (1985) (cause of action permitted when employer willfully terminates benefit payments so that claimants forced to go on welfare); *Stafford v. Westchester Fire Ins. Co.,* 526 P.2d 37 (Alaska 1974) (exclusivity no bar when insurer acts outside role going beyond bounds of untimely payments).

The appellate court remanded the case for further proceedings stating in effect that facts were insufficient to state whether there was intentional conduct of such an extent to remove the shield of immunity from the employer and his agents. As noted previously, the IIA immunizes from judicial jurisdiction "all tort actions which are premised upon the 'fault' of the employer vis-a-vis the employee." *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 242. As its claims adjuster, Wetzel is the agent of Safeway Stores, Inc., and is, therefore, subject to immunity under the IIA.

However, that immunity is lost when either the employer or the claims adjuster embarks upon a deceitful course of conduct constituting the tort of outrage. To establish a claim for the tort of outrage appellants must show: (1) severe emotional distress intentionally or recklessly inflicted; (2) outrageous or extreme conduct by the defendants; and (3) the plaintiff personally is either the object of the actions or an immediate family member present at the time of the conduct. *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 288, 669 P.2d 451, 39 A.L.R.4th 671 (1983); *Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975). For conduct to constitute outrage, it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Guffey v. State,* 103 Wn.2d 144, 146, 690 P.2d 1163 (1984) (quoting *Grimsby,* at 59).

Such facts were present in *Unruh v. Truck Ins. Exch.,* 7 Cal. 3d 616, 498 P.2d 1063, 102 Cal. Rptr. 815 (1972). In *Unruh* the California Supreme Court reversed an order of dismissal against an insurance carrier who had intentionally deceived the plaintiff into getting emotionally involved with a private investigator who was employed by the carrier. In the course of her involvement and unbeknownst to the plaintiff, another private investigator filmed the plaintiff at Disneyland as her "friend" enticed her into crossing a rope bridge and a barrel bridge and otherwise conducting herself

beyond her usual physical capabilities. When the plaintiff discovered that she had been deceived, she suffered a physical and mental breakdown requiring hospitalization. The court held that where an insurance carrier intentionally embarks upon a deceitful course of conduct in its investigation which causes injury to the plaintiff, the carrier will not be shielded by the workers' compensation statutes.

We are persuaded by the reasoning in *Unruh*. When the conduct of a self–insurer or its agent exceeds all bounds of reasonable administrative procedure, the immunity from suit provided by the workers' compensation statutes is lost. Here we conclude that Safeway's conduct, although arguably vexatious and irresponsible, did not rise to the level of "outrageous conduct" exhibited by the carrier in *Unruh*. *See also Burlew v. American Mut. Ins. Co.*, 63 N.Y.2d 412, 417, 472 N.E.2d 682, 685, 482 N.Y.S.2d 720 (1984) (plaintiff's allegations and complaint for delayed authorization of medical treatment fail to describe conduct "so extreme and outrageous as to exceed all bounds of decency"); *Jones v. P.M.A. Ins. Co.*, 343 Pa. Super. 411, 495 A.2d 203 (1985) (plaintiff's renewal of benefits conditioned on plaintiff getting a different lawyer held not "utterly intolerable" conduct). Considering the above analysis, the Deeters have not shown the tort of outrage against either Safeway Stores, Inc., or its agent Wetzel.

We further note that the Deeters did not exhaust their administrative remedies. The IIA's four policing provisions specifically address intentional delay by employers in administrative claims processing. RCW 51.48.017 provides for a penalty of $500 or 25 percent of the amount due, whichever is greater, to be assessed for unreasonable delays. RCW 51.32.190 allows the director to enact rules and regulations providing for procedures to ensure fair and prompt handling of claims. RCW 51.14.095 allows the director to take corrective action against the employer including probationary certification, mandatory training, and monitoring of the employer's activities. Finally, former RCW 51.14.080 provides for decertification of the self–insurer in five

instances, one of them being for unreasonably making the employee resort to proceedings against the employer to obtain compensation.

The Deeters dispute the effectiveness of these policing provisions and present two affidavits in this regard. The first is from a former Washington assistant attorney general for the Department who states that, in her 12 years of experience with the Department, RCW 51.48.017 was rarely applied for failure to promptly pay time loss benefits and never applied for refusal to award a pension. The second affidavit is from the self–insurance administrator for the Department who states that he has never known penalties under RCW 51.48.017 to be assessed for refusal to award a pension. Rather, he states that the penalty is used only in cases where time loss checks or permanent partial disability checks are not promptly sent.

The Deeters submit a third affidavit from a former assistant attorney general who served the Department for 5 years. She states that, in her opinion, Deeter's case is a clear pension case that should have been settled without proceeding further before the Board of Industrial Insurance Appeals. Further, she opines that some of the acts taken by Safeway were inconsistent with the proper administration of the industrial insurance laws of this state.

Nothing in the record indicates that the Deeters attempted to invoke the policing provisions. Deeter's contention that claimants do not seek these remedies or that the Department does not regularly invoke these provisions does not give us carte blanche to create common law remedies against the employer outside the statute. We quote with approval the California Court of Appeal in *United States Borax & Chem. Corp. v. Superior Court,* 167 Cal. App. 3d 406, 411, 213 Cal. Rptr. 155 (1985):

In these days of ever shrinking judicial resources, the plaintiffs' bar would be well advised to heed these rules [regarding exclusive jurisdiction of the workers' compensation appeals board] and to concentrate its energy on securing swift and simple compensation for the injured

employee in the forum which has exclusive jurisdiction over the claims. Its continual efforts to make end–runs around the exclusivity provisions of the workers' compensation system would be more appropriately addressed to the Legislature in which is vested the plenary power to create and enforce the workers' compensation system.

Thus, although this court is sympathetic with victims of questionable claims practices, it is incumbent upon the claimant to argue for implementation of the remedies provided. We therefore uphold the trial court's dismissal of Deeter's common law cause of action.

### THE WASHINGTON CONSUMER PROTECTION ACT

The Deeters next assert that Safeway's actions during the claims administration process raised the issue of a CPA violation. We disagree, concluding that under the facts as presented, a cause of action under the CPA, RCW Title 19.86, is precluded by the exclusivity provisions of the IIA. Having found that the IIA is the exclusive remedy of the Deeters, we do not further discuss the issues of a CPA violation, nor any claim under RCW Title 48, the Washington Insurance Code.

We therefore conclude that the trial court properly dismissed claims under the common law, the CPA, and the Code. We affirm.

SCHOLFIELD, C.J., concurs.

GROSSE, J. (concurring)—I concur in the result reached by the majority but feel that further explication is warranted.

To be compensable, an injury must occur in the course of employment and result from either "physical injury" or from an "occupational disease". *See Dennis v. Department of Labor & Indus.*, 44 Wn. App. 423, 722 P.2d 1317 (1986), *aff'd*, 109 Wn.2d 467, 745 P.2d 1295 (1987). If a condition does not result from either of these causes, the employee retains a right of action against the employer. *See Depre v. Pacific Coast Forge Co.*, 145 Wash. 263, 259 P. 720 (1927)

wherein our Supreme Court recognized this principle and permitted a right of action under a "safe place to work" statute where the worker was suffering from a disease that was excluded from coverage of the Industrial Insurance Act (IIA). More recently in *McCarthy v. Department of Social & Health Servs.*, 46 Wn. App. 125, 730 P.2d 681 (1986), *review granted,* 108 Wn.2d 1001 (1987), this court reiterated this same principle. There we held that the plaintiff was entitled to show that her disease was not within the coverage of the IIA and therefore that she had a common law action for negligence against her employer. The rationale of the court is apposite.

In our judgment, if McCarthy could show that her disease was not an occupational disease, and thus not within the coverage provisions of the act, her private cause of action should not be barred under the exclusive remedy provisions of RCW 51.32.010. In coming to this conclusion, we emphasize that a fundamental distinction must be drawn between a disease which does not come within coverage provisions of the act, and a disease which is covered but for which under the facts of the particular case, no compensation is payable. In the former class are cases in which (1) the employment relation did not exist, (2) the claimant or his employer was within an excluded category, or (3) there was no disease arising out of the employment. 2 A. Larson, *Workmen's Compensation* § 65.10 (1986). For example, if it is shown that McCarthy's disease does not come within the definition of occupational disease because it is not a disease peculiar to, or inherent in, the industry and could not, therefore, arise "naturally" out of the conditions of the employment, then McCarthy's common law cause of action would not be barred. On the other hand, if it was shown in a common law action that McCarthy's disease meets the definition of an "occupational disease," but that McCarthy simply failed to meet her burden of proof before the Department and the Board, then her cause of action would be barred by the exclusive remedy provisions of RCW 51.04.010.

*McCarthy,* at 131.

In Washington, just what kind of injury is within the coverage formula so as to trigger the exclusivity provision of the IIA is subject to debate. In several recent cases, the Washington Supreme Court has allowed civil actions by the employee against the employer on the basis that the alleged injuries were not within the coverage of the IIA. In *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 726 P.2d 434 (1986), the court held that the IIA does not bar an action for emotional distress occurring as a result of the tort of wrongful termination of employment. The court reasoned that the injury resulted from the termination and not while the plaintiff was "acting in the course of employment." In *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 731 P.2d 497 (1987), the court confronted the issue of whether the IIA barred an action for employment discrimination resulting from the employer's refusal to make reasonable accommodations on rehire for the disabilities suffered by an employee who had received compensation under the IIA. The court held that a civil cause of action for employment discrimination is not barred because the injury caused by such discrimination is not a physical injury occurring in the course of employment. The court analyzed the nature of the discrimination claim and of the workplace injury and determined that Reese suffered two injuries that were of a different nature, that arose at different times in the employee's work history, and that required different causal factors. The court specifically narrowed the holding of *Seattle–First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 588 P.2d 1308 (1978) to workplace injuries. Similar approaches have been used by courts in other jurisdictions. *See Coleman v. American Universal Ins. Co.*, 86 Wis. 2d 615, 273 N.W.2d 220 (1979); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo. 1985); *cf. Carpentino v. Transport Ins. Co.*, 609 F. Supp. 556 (D. Conn. 1985); *Gibson v. National Ben Franklin Ins. Co.*, 387 A.2d 220 (Me. 1978).

The weakness of the *Reese* approach in the present context lies in the fact that it does not distinguish between claims that are interwoven with the compensation award

and thus should be barred, and claims involving a wrong that is only tenuously related to the workplace. *Compare Carpentino with Waldon v. Hartford Ins. Group,* 435 So. 2d 1271 (Ala. 1983). A claim which arises from a bona fide dispute over compensation is inextricably interwoven with the compensation scheme. Therefore, the penalty provisions for unreasonable delay in payments are exclusive. *See Dickson v. Mountain States Mut. Cas. Co.,* 98 N.M. 479, 650 P.2d 1 (1982); *Robertson v. Travelers Ins. Co.,* 95 Ill. 2d 441, 448 N.E.2d 866 (1983).[3] As Professor Larson states:

> It seems clear that a compensation claimant cannot transform a simple delay in payments into an actionable tort by merely invoking the magic words "fraudulent, deceitful and intentional" or "intentional infliction of emotional distress" or "outrageous" conduct in his complaint. The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality.
>
> One final factor may be noted that has figured in many of these cases: the presence in the statute of an administrative penalty for the very conduct on which the tort suit is based. A majority of the courts have taken the view that this evidences a legislative intent that the remedy for delay in payments, even vexatious delay, shall remain within the system in the form of some kind of penalty.

(Footnotes omitted.) 2A A. Larson, *Workmen's Compensation* § 68.34(c), at 13–145 (1987).

Where the claim alleges facts of misconduct beyond a bona fide dispute over compensation, and the wrongdoing is only tenuously related to the industrial accident, the employer has been held not to be immune. *DeMarco v. Federal Ins. Co.,* 99 A.D.2d 114, 472 N.Y.S.2d 464 (1984)

---

[3]RCW 51.48.015 (misdemeanor violation for employer's failure to secure payment of compensation); RCW 51.48.017 (penalty accruing to claimant for self–insurer's delay or refusal to pay compensation).

(damages claimed are outside awardable compensation benefits and were never intended to be the exclusive province of the compensation board); *Stafford v. Westchester Fire Ins. Co.*, 526 P.2d 37 (Alaska 1974); *Unruh v. Truck Ins. Exch.*, 7 Cal. 3d 616, 498 P.2d 1063, 102 Cal. Rptr. 815 (1972); *but see* 2A A. Larson, *Workmen's Compensation* § 68.34(b) (1987), criticizing the analysis in *Unruh* and suggesting that the better approach is one seeking to determine whether damages are sought for events entirely distinct from the initial industrial injury, and/or whether the injury is the kind covered by the compensation law.

The gravamen of the complaint in the instant case is delay in payment and/or refusal to pay a pension, actions which were taken as a result of a bona fide dispute over the amount of compensation. In other words, whatever harm Deeter suffered was occasioned by Safeway's adverse position on compensation. The facts do not support finding a breach and duty that can be considered to be only tenuously related to the industrial injury such as the duty to refrain from outrageous conduct or to refrain from intentionally harming Deeter. If Safeway acted unreasonably, Deeter's remedy is under the IIA, not by civil tort action.[4]

The question of the immunity of Scott Wetzel Services, Inc., is more difficult. Former RCW 51.24.030 allows a civil tort action against a "third person not in the same employ". The IIA definition of employer does not include a claims adjuster and there is no specific legislative directive on this issue. While it is tempting to construe the IIA narrowly and allow an action against Scott Wetzel, this court cannot ignore the purpose and policy arguments underlying the IIA. *See Shoreline*, at 242; *Sacred Heart Med. Ctr. v. Carrado*, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979). The relationship of the employee, the employer, and the claims

---

[4]Of course, because RCW 51.24.020 allows a civil action for intentional injury, an employer is not immune for torts committed with the specific intent to injure the employee. *Foster v. Allsop Automatic, Inc.*, 86 Wn.2d 579, 547 P.2d 856 (1976); *Nielson v. Wolfkill Corp.*, 47 Wn. App. 352, 734 P.2d 961 (1987).

adjuster for the employer with respect to a claim for delay in payment which involves a dispute over the right to, or amount of, compensation flows from the rights and obligations created by the IIA, not from any independent source. To permit a right of action against the claims adjuster merely because *it is a "third party"* would vitiate the policy of IIA.[5]

The opinion of the majority follows *Unruh* and recognizes a cause of action for more than mere delay in payment but less than an intentional tort, *i.e.,* actions for outrage. I concur but agree with Professor Larson's criticism of *Unruh* and feel that the rationale for that result should focus on the alleged misconduct and its relationship to the industrial accident. Even under that approach, however, these facts do not show an injury resulting from events entirely distinct from the compensation act. The alleged misconduct of defendants occurred in the claims administration process and is so interwoven with the compensation award and the industrial injury that the claimant must look to the IIA exclusively for his remedy.

Review denied by Supreme Court April 5, 1988.

---

[5]However, *compare Santiago v. Employee Benefits Servs.,* 168 Cal. App. 3d 898, 214 Cal. Rptr. 679 (1985) (dismissing a civil action against a claims adjuster on the basis that the compensation board had exclusive jurisdiction even though claims adjuster was not specifically immunized in the compensation act) *with Dill v. Claims Admin. Servs.,* 178 Cal. App. 3d 1184, 224 Cal. Rptr. 273 (1986) (holding that the claims adjuster was a person other than the employer and was subject to civil suit).