[No. 14153-5-III. Division Three. February 22, 1996.]

ROBERTA L. GOYNE, *Individually and as Personal Representative*, ET AL., *Appellants*, v. QUINCY-COLUMBIA BASIN IRRIGATION DISTRICT, *Respondent*.

---

*Nels A. Hansen* and *Hansen Law Firm*, for appellants.

*Andrew C. Bohrnsen* and *Bohrnsen & Owen, P.S.*, for respondent.

THOMPSON, J. — Roberta L. Goyne, individually and as personal representative, appeals the dismissal of her lawsuit against the employer of her deceased husband, Jim Bob Goyne. She contends the trial court erred in concluding that her action, based on the employer's negligence, was barred by the Washington Industrial Insurance Act, RCW Title 51. We affirm.

## FACTS

On January 22, 1990, Mr. Goyne was operating a dragline alone as a condition of his employment with Quincy-Columbia Basin Irrigation District (QCBID). He drove his truck, which did not have a radio, to a location which was remote in the sense there were no other persons in the proximity who could have observed him working. These conditions violated WAC 296-155-525 and WAC 296-155-100.[1]

At approximately 10:00 A.M., Mr. Goyne suffered a stroke. He fell to the ground and remained on the ground in temperatures at or near freezing. He was not discovered until approximately 4:30 P.M. when coemployee, Rick Thompson, came to the area in response to a call from Mr. Goyne's son. At approximately 6:00 P.M., an ambulance arrived and took Mr. Goyne to Samaritan Hospital in Moses Lake where he was seen by Dr. L. H. Turk. Mr. Goyne was moved to Spokane for further medical care on Janu-

---

[1]WAC 296-155-525 required a two-person crew on the type of dragline Mr. Goyne operated. WAC 296-155-100 prohibited an employer from placing an employee in a position or location not within ordinary calling distance of another employee able to render assistance in case of emergency.

ary 23. He died on January 25 from complications suffered as a result of the stroke.

Ms. Goyne filed a claim for widow's pension under RCW 51.32.050 of the Industrial Insurance Act (IIA). RCW 51.32.050 provides for payments of death benefits to the surviving spouse of a deceased worker where the worker's death "results from the injury." The Department of Labor and Industries (Department) rejected the claim on the basis her husband's death did not result from an injury or occupational exposure in the course of his employment. Ms. Goyne appealed to the Board of Industrial Insurance Appeals (Board).

At the Board hearing, there was testimony that the truck and dragline were running when employees found Mr. Goyne at about 4:30 P.M. The truck was located 30 to 50 feet from the dragline. The drag cable was tangled on the spool, a condition normally requiring untangling by hand. However, employees testified there was no indication Mr. Goyne had been trying to untangle the dragline when he fell. One employee testified Mr. Goyne told him he fell out of the truck. Another testified that Mr. Goyne told him he had been on the ground by the truck since 10:00 A.M. His lunch was not eaten.

Dr. Turk testified it was a possibility that Mr. Goyne's prolonged exposure to the elements contributed to his death. Dr. Turk also testified that several other factors such as Mr. Goyne's morbid obesity and increased blood pressure contributed to his death. The only exposure-related medical finding presented at hearing was that Mr. Goyne was slightly dehydrated when first brought to the hospital.

The Board determined Mr. Goyne's stroke did not result from a physical injury or occupational disease under the IIA, although his exposure to the elements following the stroke was a distinctive condition of employment. Finding no evidence that the exposure complicated, delayed or affected the course of Mr. Goyne's treatment for the stroke once medical intervention started, the Board concluded

the exposure was not the proximate cause of death. The Department's denial of Ms. Goyne's claim was affirmed.

Ms. Goyne appealed the Board's decision to superior court. A jury was empaneled. At the close of evidence, the Department's motion for dismissal was granted. The Board's decision was affirmed.

Ms. Goyne did not appeal the superior court order affirming the Board's denial of her pension. Instead, she commenced this action against QCBID individually, and as personal representative of the estate and beneficiaries of her deceased husband. She alleged that the violations of safety standards by QCBID caused Mr. Goyne's subsequent death.

QCBID moved for dismissal of Ms. Goyne's complaint (1) for failure to state a claim upon which relief can be granted and (2) based on QCBID's immunity from damages pursuant to the IIA. The court converted QCBID's motion into a motion for summary judgment and granted it. Ms. Goyne's lawsuit was dismissed.

CONTENTIONS

Ms. Goyne contends her tort action should not have been dismissed because QCBID breached its duty to provide a safe place for her husband to work and worker's compensation did not "cover his injury." When an injury is not compensable under the IIA, Ms. Goyne contends an employer is not immune from a civil tort action. She cites *McCarthy v. Department of Social & Health Servs.*, 110 Wn.2d 812, 817, 759 P.2d 351 (1988); *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 571, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. City of Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989); and *Deeter v. Safeway Stores, Inc.*, 50 Wn. App. 67, 74, 747 P.2d 1103 (1987), *review denied*, 110 Wn.2d 1016 (1988).

QCBID contends the deceased's injuries were covered under the IIA, but were deemed noncompensable in administrative proceedings because the stroke was not

caused by any unusual exertion and the exposure did not cause death. That final decision, QCBID contends, collaterally estops Ms. Goyne from relitigating the proximate cause of her husband's death.

## ANALYSIS

### A. Exclusive Remedy Provisions of the IIA

The exclusive remedy provisions of IIA are contained in RCW 51.04.010 and RCW 51.32.010. RCW 51.04.010 states in relevant part:

> [A]ll phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdictions of the courts of the state over such causes are hereby abolished, except as in this title provided.

RCW 51.32.010 states in relevant part:

> Each worker injured in the course of . . . employment, or his or her family or dependents in case of death of the worker, shall receive compensation in accordance with this chapter, and, except as in this title otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever . . . .

■ The exclusive remedy provisions quoted above have been interpreted to abolish judicial jurisdiction over all civil tort actions brought by employees, their families and dependents when those actions are "premised upon the 'fault' of the employer vis-a-vis the employee" for workplace injuries compensable under the IIA. *Reese*, 107 Wn.2d at 571 (citing, quoting and clarifying *Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 242, 588 P.2d 1308 (1978)). *See also Deeter*, 50 Wn. App. at 74. Although the statutes refer only to injuries, the exclusive

remedy provisions apply to occupational diseases as well. *McCarthy*, 110 Wn.2d at 816.

## B. "Covered" Injuries Versus "Compensable" Injuries

█ Injury is defined in RCW 51.08.100 as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." An injury is compensable under the IIA if it occurs in the course of employment and a causal relationship between the injury and the condition for which compensation is sought is established by sufficient medical testimony. *Sawyer v. Department of Labor & Indus.*, 48 Wn.2d 761, 296 P.2d 706 (1956). For example, a stroke occurring in the course of employment could be compensable if it were the product of an unusual exertion or event. *Spino v. Department of Labor & Indus.*, 1 Wn. App. 730, 463 P.2d 256 (1969), *review denied*, 77 Wn.2d 962 (1970).

Here, the determination whether Mr. Goyne's underlying injury was compensable under the IIA was adjudicated in proceedings commenced and completed before this action was filed. In those proceedings, the Board's industrial appeal's judge (IAJ) acknowledged that a stroke is compensable under the IIA if it is a product of unusual exertion in the workplace. Proposed Decision and Order, Clerk's Papers at 32 (citing *Spino*, 1 Wn. App. at 730). The IAJ also determined there was no evidence that Mr. Goyne underwent unusual exertion causing the stroke. The Board did not disagree. As to Mr. Goyne's exposure to the elements following the stroke, the Board determined that exposure *was* a distinctive condition of employment, but was *not* the proximate cause of death.

Ms. Goyne's claim was denied because she did not prove that the conditions of her husband's employment, the acts upon which she bases this negligence action, proximately caused her husband's death. It was a failure of proof which resulted in the rejection of her claim, not a determination that the type of injury suffered would not be compensable under the IIA if causation were proven.

■ *McCarthy* acknowledged the distinction between an occupational injury that is within the basic coverage of the IIA and one which, under the facts of the particular case, is not compensable. This rather subtle distinction determines whether a common law action against an employer is barred. As *McCarthy* explained:

> [A] distinction must be drawn between an occupational disease or injury that is not within the basic coverage of the Act and an occupational disease or injury that is within the basic coverage of the Act, but for which, under the facts of the particular case, no compensation is payable. Under the former, since the disease or injury is not covered at all, the exclusive remedy provisions of the [IIA] do not bar an employee's common law action. Under the latter, the employee's disease or injury is compensable under the [IIA] . . . but the employee fails to meet the burden of proof as to some component of the claim. Where the employee's disease or injury is covered by the [IIA], but the employee fails to establish entitlement to compensation, the exclusive remedy provisions will defeat any common law action.

*McCarthy*, 110 Wn.2d at 824 (citations omitted). *See generally* 2A Arthur Larson, *Workmen's Compensation Law* § 65.53(c), at 12-64 to 12-65 (1990).

The distinction explained in *McCarthy* is helpful in understanding *Reese,* cited by Ms. Goyne, and the more recent case of *Goodman v. Boeing Co.*, 127 Wn.2d 401, 899 P.2d 1265 (1995). *Reese,* an action for handicap discrimination against an employer, determined that the injury of discrimination was separable from compensable injury under the IIA because the injuries (1) are of a different nature, (2) must arise at different times in the employee's work history, and (3) require different causal factors (discrimination claims require fault while an IIA claim is indifferent to employer fault). *Reese,* 107 Wn.2d at 574. Therefore, under *Reese,* an action for handicap discrimination against an employer is not barred by the IIA when the underlying disability arose in the workplace.

The *Reese* holding was expanded to permit recovery for

separate physical or emotional injuries flowing from an employer's discrimination in *Goodman*. *Goodman*, 127 Wn.2d at 404-05, also recognized that no statutory conflict between the IIA and the discrimination laws arose because they compensated different injuries. The *Reese* and *Goodman* type "exception" to the immunity provisions of the IIA are inapplicable here.

 Ms. Goyne also contends the IIA does not contemplate that an employee's common-law remedy be abolished without providing a substitute remedy. *McCarthy*, 110 Wn.2d 812. We agree. However, as noted above, but for the failure of proof as to the proximate cause of death and stroke, Ms. Goyne would have had a remedy under the IIA. As to any inequities which may thereby arise, *Seattle-First*, 91 Wn.2d at 242 states:

> The determination to abolish judicial jurisdiction over . . . 'immunized' conduct was a legislative policy decision. The wisdom of that decision is not a proper subject of our review.

Because we conclude that Ms. Goyne's action was barred by the IIA, we need not reach the employer's contentions that her action is barred by collateral estoppel.

We affirm.

SCHULTHEIS, A.C.J., and MUNSON, J., concur.