[No. 22996.   Department One.   July 22, 1931.]

JOE PELLERIN, *Respondent*, v. WASHINGTON VENEER
COMPANY, *Appellant*.[1]

[1]Reported in 2 P. (2d) 658.

*Thos. L. O'Leary,* for appellant.

*John S. Lynch* and *S. H. Kelleran,* for respondent.

HOLCOMB, J.—Respondent sued and recovered judgment for damages, and this appeal results.

The complaint of respondent, in substance, alleges:

That respondent, a man sixty-two years of age, was employed by appellant during the period from July 27, 1927, to March 5, 1929, in a veneer mill and work shop operated by appellant, where machinery is used and manual labor is exercised for the purpose of gain within an enclosed room maintained by appellant, in which it operated and conducted a glue-mixing department where machines or mixers were used in mixing the several ingredients entering into the composition of glue, in which room respondent worked as an employee; a description of the ingredients composing the glue mixture was then made.

It was then alleged that gases and vapors exuded from the heated mixture, permeated the air in the en-

closed room, generating carbon bisulphide, by which appellant was poisoned, so that on March 5, 1929, he was compelled to quit work because of disabilities caused by carbon bisulphide poisoning; that, as a result of such poisoning sustained in the course of his employment, he was caused severe headaches, weakness, joint pains, mild mental disturbances, marked weakness of the extremities and anaesthesia of the skin of the arms and legs, cramps, dizziness, disorders of digestion, tremor, colic, diarrhea, constipation, and increasing weakness and nervous disturbances, rendering respondent unfit for gainful work since March 5, 1929, except for a short period of time, and that he will be incapacitated from working at any hard labor at a gainful occupation for the rest of his life.

The negligence alleged is in failing to provide the workroom with good and sufficient ventilators, so as to carry off and render harmless, as far as practicable, all gases, vapor, dust and other impurities generated in the course of the labor process carried on therein as alleged; that appellant failed to provide the enclosed room with ventilation, conveyors and flues, or with any provisions to carry off such gases and vapors and impurities, as is required by Rem. Comp. Stat., § 7659; that at different times, shortly before he was compelled to quit work, respondent complained to appellant of being affected by the fumes and vapors from the carbon bisulphide and from the glue process, and about ten days or two weeks before he was obliged to quit work, appellant provided nose masks for the workmen employed in the enclosed room, but at that time said masks or protectors were of no benefit to respondent because they had not been provided in time.

The answer of appellant, besides containing a general denial, affirmatively pleads first, contributory neg-

ligence, and second, assumption of risk. These affirmative answers were denied by the reply.

A group of seven claims of error relate to the contention of appellant that the only remedy of respondent is under the industrial compensation act.

In *Depre v. Pacific Coast Forge Co.*, 145 Wash. 263, 259 Pac. 720, and the same case on second appeal, 151 Wash. 430, 276 Pac. 89, a poisoning case, we held that the defendant there had violated the provisions of the factory act. In *Seattle Can Co. v. Department of Labor and Industries*, 147 Wash. 303, 265 Pac. 739, another poisoning case, we held that the case came within the workmen's compensation act, for the reason that the disease complained of was caused by the fortuitous event mentioned in the statute as it then was, defining the word injury or injured as "an injury resulting from some fortuitous event as distinguished from some contraction of disease."

By Chapter 310, Laws of 1927, p. 818, § 2, the legislature changed the definition of injury to read:

"The word 'injury' as used in this act means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical condition as results therefrom." Rem. 1927 Sup., § 7676.

This definition was retained and reenacted in 1929 (Laws of 1929, Chap. 132, p. 325).

It will thus be noted that the period of occupation of respondent by appellant was after the passage and effective date of the act of 1927.

"Traumatic" is defined by Webster as "a wound; of or pertaining to wounds; applied to wounds." The words in the act of 1927, defining injury, referring to a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, therefore undoubtedly mean some

blow or wound, suddenly and tangibly happening, producing an immediate or prompt result as opposed to something in the nature of occupational disease with which we dealt in the *Seattle Can Co.* decision, *supra.*

The manifest intention of the legislature in the enactment of the new definition of injury was to make more certain the definition of injury and make it apply strictly to sudden and tangible happenings occurring from without of a traumatic nature producing an immediate or prompt result, as distinguished from anything like an occupational disease.

We are convinced that this case does not fall within the workmen's compensation act as amended.

The section of the factory act which appellant is alleged in the complaint to have violated, reads:

"Every factory, mill or workshop where machinery is used and manual labor is exercised by the way of trade for the purposes of gain within an inclosed room (private houses in which the employees live, excepted) shall be provided in each workroom thereof with good and sufficient ventilation and kept in a cleanly and sanitary state, and shall be so ventilated as to render harmless, so far as practicable, all gases, vapors, dust or other impurities, generated in the course of the manufacturing or laboring process carried on therein; and if in any factory, mill or workshop, any process is carried on in any inclosed room thereof, by which dust is generated and inhaled to an injurious extent by the persons employed therein, conveyors, receptacles or exhaust fans, or other mechanical means, shall be provided and maintained for the purpose of carrying off or receiving and collecting such dust." Rem. Comp. Stat., § 7659.

Appellant contends that the room in which respondent worked was not an enclosed room within the meaning of the statute, for the reasons that it had four sectional openings in the roof, each of the diameter of thirty inches; that there was a window on the south

opening to the outside, always kept open, measuring 39 inches by 55 inches; that there was a 16-inch opening in the floor of the room for practically its whole length of 176 feet, giving a free passage of air between the glue room proper and the main factory; that in the north wall of the glue room there was a doorway 32 inches by 6 feet 8 inches, to which no door was attached, which permitted the free passage of air between the glue room proper and main factory, and, also, another door opening into a room on the west and to which no door was attached; that there were sundry openings between the glue room and the main factory on the north side of the glue room.

Definitions from lexicographers and law dictionaries, and other authorities, are then cited to the effect that "enclosed" means "to surround with walls, fences or other barriers so as to prevent free ingress or egress; to shut up in a room or building; to seclude, imprison."

This cannot be decided as a mere question of law, but is a mixed question of law and fact. No dimensions or descriptions of an enclosed room are fixed by the factory act. The room in question was beyond doubt a workshop within four walls, where machinery is used and manual labor exercised, as mentioned in the factory act.

The evidence as to the dimensions of the glue room, the number and character of openings which were capable of or permitted to be opened, the nature and number of ventilators through the roof, were all described to the jury by various witnesses, who did not all agree. The jury viewed the premises, and were thus able to arrive at a correct solution of the evidence and presumably did so.

The court instructed the jury as follows:

". . . that unless you find from a fair preponderance of the evidence that the room in which plaintiff

worked while he was employed by the defendant was an 'inclosed room'; and further find from a fair preponderance of the evidence that the defendant failed to provide said room with good and sufficient ventilation so as to render harmless, so far as practicable, all gases and vapors arising from use of carbon bisulphide in said room, then your verdict must be in favor of the defendant.''

This instruction was excepted to by respondent, but not by appellant. It became the law of the case. It was certainly a very favorable instruction to appellant.

Under the facts and the law we consider that we are bound by the verdict of the jury that the room in question was an inclosed room within the meaning of the statute.

Appellant also asserts that there is no proof that carbon bisulphide, in harmful quantities, was found in the glue room.

The proof as to the nature of the ailments suffered by respondent, and that they could be caused, in all probability, by carbon bisulphide generated in harmful quantities in an ill-ventilated room, was some proof. Circumstantial evidence by reasonable deductions of fact from the other facts in evidence may be relied upon in such a case as this by the tryer of the facts. *Atwood v. Washington Water Power Co.,* 79 Wash. 427, 140 Pac. 343.

In connection with this contention, appellant contends, in effect, that the diagnoses made by medical experts for respondent were entirely arbitrary, having been made merely upon subjective statements by respondent.

The question as to the reliability and truthfulness of the statements made by respondent to his medical experts and their diagnoses thereon, were all questions of fact for the jury. There was sufficient evidence produced for the jury to pass upon.

562

■ Appellant complains of an instruction given to the jury, No. 9, too lengthy to reproduce here, particularly because the instruction refers to respondent having become sick, and being still sick, and having had and still having carbon bisulphide poisoning, and having, as alleged in the complaint, had his resistance lowered by reason of inhaling and absorbing through the skin such vapors or gases generated in such inclosed room, or having any of the alleged sickness, pain, anaesthesia, diarrhea, headaches, nervous disorders or other alleged ailments, such as are alleged in the complaint, that then the jury should find that the defendant was guilty of negligence which would form a basis for the recovery of damages.

The ailments referred to in the instruction were all alleged in the complaint and were all testified to by respondent. They were alleged to have been results from the generation of the carbon bisulphide gas in the inclosed room by the neglect of appellant. We can see no reasonable objection to the parts of the instruction of which complaint is made.

■ Appellant also assails as erroneous, instruction No. 10. This instruction is complained of because it contains the words

" . . . and kept in a cleanly and sanitary state, and shall be so ventilated as to render harmless so far as practicable, all gases, vapors, dust and other impurities generated in the course of the manufacturing or labor process carried on therein."

This instruction follows the language of the factory act, and, while the immediate cause producing the ailments complained of by respondent was that of the generation of carbon bisulphide gas, that was the only thing to which the condition of respondent could be traced. The other matters were merely incidental. There was no prejudicial error in the instruction.

 Appellant also contends that the contributory negligence of respondent was established.

The duty to furnish a safe place is a nondelegable duty of the employer under the factory act. Under the facts shown in this case, as found by the jury, by which we are bound, there was an inclosed room which was not sufficiently ventilated as required by law. Under such facts, the employee does not assume the risk as a matter of law, and the question of his contributory negligence is thereby necessarily decided. *Doyle v. Great Northern Railway Co.*, 43 Wash. 558, 86 Pac. 861; *Johnson v. Far West Lumber Co.*, 47 Wash. 492, 92 Pac. 274; *Depre v. Pacific Coast Forge Co.*, 151 Wash. 430, 276 Pac. 89.

Several trial errors are complained of which, having been fully examined, are found to be of not sufficient moment to constitute prejudicial error.

Finding no error, the judgment is affirmed.

TOLMAN, C. J., MILLARD, and MAIN, JJ., concur.