[No. 53548–5. En Banc. June 30, 1988.]

HELEN MCCARTHY, *Respondent,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Petitioner.*

*Kenneth O. Eikenberry, Attorney General,* and *Gregory F. Brunson, Assistant,* for petitioner.

*Miles, Way & Coyne,* by *Stephen C. Way,* for respondent.

DORE, J.—We hold that the State of Washington owes an employee a duty to provide a safe place to work, and where workers' compensation does not apply, such an employee may bring a common law action against the State, for breach of such duty, and resultant damages.

## FACTS

Helen McCarthy was a Department of Social and Health Services employee from February 1970 to December 1980. As an employee she was required to work in an office environment that continuously exposed her to cigarette and tobacco smoke. She complained to her supervisors that her constant exposure to cigarette smoke was having an adverse effect on her health. Despite DSHS's awareness of her pulmonary problems, it failed to take any steps to correct the situation.

As a result of her constant exposure to tobacco smoke in the workplace, McCarthy developed "chronic obstructive pulmonary disease, with broncho–spasm and diminished pulmonary function with sensitivity to tobacco smoke". Clerk's Papers, at 2. In October 1980, McCarthy's physician advised her that she was not capable of performing her employment duties unless the State provided her a clean air environment. Finally, in December 1980, McCarthy's pulmonary disease became totally disabling and she was forced to terminate her employment.

In April 1981 McCarthy filed a claim with the Department of Labor and Industries for workers' compensation benefits contending that her pulmonary disease was an occupational disease contracted during the course of her employment. The Department denied the claim whereafter McCarthy appealed to the Board of Industrial Insurance Appeals. McCarthy alleges that the Board denied her claim on the grounds that her

pulmonary lung disease was not the result of an industrial injury, nor did it constitute an occupational disease within the contemplation of the Washington Industrial Insurance Act . . .

Clerk's Papers, at 3. Neither McCarthy nor the State appealed the Board's decision.

Unable to obtain workers' compensation, McCarthy sued the State in Thurston County Superior Court alleging that its negligent failure to provide McCarthy a smoke–free environment caused her disabling pulmonary disease. The State moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. CR 12(b)(6). The trial court granted the motion. McCarthy appealed and the Court of Appeals reversed and remanded for a trial. *McCarthy v. Department of Social & Health Servs.*, 46 Wn. App. 125, 730 P.2d 681 (1986), *review granted,* 108 Wn.2d 1001 (1987). We affirm.

## Exclusive Remedy

The State first argues that the Washington Industrial Insurance Act, RCW Title 51, provides the exclusive remedy for McCarthy's injuries. The Act provides:

> The state of Washington . . . exercising herein its police and sovereign power, declares that *all phases of the premises are withdrawn from private controversy,* and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; *and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.*

(Italics ours.) RCW 51.04.010 (part). RCW 51.32.010 governs who is entitled to compensation; it provides in relevant part:

> Each worker injured in the course of his or her employment, . . . shall receive compensation in accordance with this chapter, and, except as in this title otherwise provided, *such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever:* . . .

(Italics ours.)

The Act provides basic coverage for injuries sustained in the course of employment. RCW 51.32.010. *See* RCW 51.08.100. When enacted in 1911, the Act expressly excluded coverage for disability resulting from occupational diseases. Laws of 1911, ch. 74, § 3, p. 346, 349; *see Washington Legislation—1941: Workmen's Compensation,* 16 Wash. L. Rev. 59, 153, 154 (1941). In 1937 the Act was amended to provide compensation for disability or death caused by any one of 21 specified diseases. Laws of 1937, ch. 212, § 1, p. 1031. Eventually, the Legislature eliminated the list of enumerated compensable diseases and provided basic coverage for occupational diseases that arise "naturally and proximately out of employment". RCW 51.08.140. Although the exclusive remedy provisions refer only to injuries, when occupational diseases were made compensable, the Act became the exclusive remedy for employees against their employers for such diseases. *See* RCW 51.16-.040; RCW 51.32.180.

The State argues that the Act's exclusive remedy provisions, which abolish other civil remedies for work–related injuries and diseases and provide compensation in lieu of other rights of action, bar McCarthy's common law action. We disagree.

■ The Act is based on a quid pro quo compromise between employees and employers. The court in *Stertz v. Industrial Ins. Comm'n,* 91 Wash. 588, 590–91, 158 P. 256 (1916) explained the compromise: The employer agreed to pay on some claims for which there had been no common law liability in exchange for limited liability. The employee agreed to give up available common law actions and remedies in exchange for sure and certain relief under the Act. *See Weiffenbach v. Seattle,* 193 Wash. 528, 534–35, 76 P.2d 589 (1938). Barring a common law action without providing a substitute remedy under the Act would abrogate the quid pro quo compromise between the employee and the employer. Professor Larson explains:

> If . . . the exclusiveness defense is a "part of the *quid pro quo* by which the sacrifices and gains of employees

and employers are to some extent put in balance," it ought logically to follow that the employer should be spared damage liability only when compensation liability has actually been provided in its place, or, to state the matter from the employee's point of view, rights of action for damages should not be deemed taken away except when something of value has been put in their place.

(Footnote omitted.) 2A A. Larson, *Workmen's Compensation* § 65.40, at 12–41 (1987).

Washington has long recognized that the Act does not contemplate that an employee's common law remedy can be abolished without providing a substitute remedy. Prior to the inclusion of occupational diseases, an employee allegedly suffering from such a disease was not barred by the Act's exclusive remedy provisions from bringing a common law action because such diseases were not within the purview of the Act. *Pellerin v. Washington Veneer Co.*, 163 Wash. 555, 558–59, 2 P.2d 658 (1931); *Depre v. Pacific Coast Forge Co.*, 145 Wash. 263, 264, 259 P. 720 (1927). The State's argument that *Pellerin* and *Depre* can be distinguished on the ground that the Act now provides coverage for occupational diseases is without merit. Although the Act provides coverage for occupational diseases, it does not provide the exclusive remedy if the work–related disease falls outside the basic coverage of the Act.

The State's reliance on *Seattle–First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 588 P.2d 1308 (1978) to support its exclusive remedy argument is also misplaced. In *Seattle–First* the court stated that the Act "abolishes judicial jurisdiction over *all* civil actions for personal injuries arising between employees and the employers." *Seattle–First*, at 242; *see also Corr v. Willamette Indus., Inc.*, 105 Wn.2d 217, 219, 713 P.2d 92 (1986); *Provost v. Puget Sound Power & Light Co.*, 103 Wn.2d 750, 755, 696 P.2d 1238 (1985). This broad language concerning the scope of the Act's exclusive remedy provisions was recently clarified in *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 571, 731 P.2d 497 (1987) wherein we observed:

We did not mean to imply in *Seattle–First* that all other types of civil actions between employers and employees were foreclosed. Rather, in referring to "all civil actions, " we were discussing civil tort actions "premised upon the 'fault' of the employer vis–a–vis the employee" for workplace injuries compensable under the [Act].

According to the allegations of the complaint, McCarthy's pulmonary disease is not an occupational disease compensable under the basic coverage of the Act. This allegation is sufficient to withstand a CR 12(b)(6) motion to dismiss based on the exclusive remedy provisions of the Act.

### COMMON LAW ACTION

McCarthy's action may be dismissed for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief." *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 961, 577 P.2d 580 (1978); CR 12(b)(6). McCarthy has alleged that DSHS's negligence proximately caused her disabling pulmonary disease.

A cause of action for negligence will not lie unless the defendant owes a duty of care to the plaintiff. *See Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984). In Washington, an employer has an affirmative and continuing duty to provide all employees a reasonably safe place to work. *Guy v. Northwest Bible College,* 64 Wn.2d 116, 118, 390 P.2d 708 (1964); *Myers v. Little Church by the Side of the Road,* 37 Wn.2d 897, 901–02, 227 P.2d 165 (1951); *see Ward v. Ceco Corp.,* 40 Wn. App. 619, 628–29, 699 P.2d 814, *review denied,* 104 Wn.2d 1004 (1985). The standard of care to be exercised by the employer is to take the precaution of an ordinarily prudent person in keeping the workplace reasonably safe. *Myers,* at 902. This common law duty of an employer to provide a safe workplace for employees has been codified in the Washington Industrial Safety and Health Act of 1973. RCW 49.17.060.

The question presented is whether the employer's common law duty to provide a safe workplace includes a duty to provide a working environment reasonably free from tobacco smoke. We hold that the State as an employer has such a duty.

The hazardous nature of cigarette smoke to nonsmokers is well established. In 1972, the Surgeon General indicated that a smoke–filled room often exceeds the legal limit for maximum air pollution and presents a possible health hazard to exposed persons. U.S. Dep't of Health, Educ. & Welfare, *The Health Consequences of Smoking, A Report of the Surgeon General* 125–29 (1972). More recently the Surgeon General undertook an extensive study of the scientific evidence on involuntary smoking as a potential cause of disease in nonsmokers. The Surgeon General, in 1986, made the following conclusions:

1. Involuntary smoking is a cause of disease, including lung cancer, in healthy nonsmokers.

. . .

3. The simple separation of smokers and nonsmokers within the same air space may reduce, but does not eliminate, the exposure of nonsmokers to environmental tobacco smoke.

U.S. Dep't of Health & Human Servs., *The Health Consequences of Involuntary Smoking, A Report of the Surgeon General* 7 (1986).

Another study concluded that approximately 5,000 nonsmokers die each year from lung cancer caused by involuntary smoking. Repace & Lowery, *A Quantitative Estimate of Nonsmokers' Lung Cancer Risk from Passive Smoking,* 11 Env't Int'l 3 (1985). Added to this high cost in human life, are the various physical discomforts nonsmokers suffer when forced to work in smoke–filled work areas and the lost productivity and health care expenses due to smoking. *See* Paolella, *The Legal Rights of Nonsmokers in the Workplace,* 10 U. Puget Sound L. Rev. 591, 592–96 (1987).

The Legislature has recognized that nonsmokers have a right to a clean air environment. The legislative intent section of the Washington Clean Indoor Air Act provides:

> The legislature recognizes the increasing evidence that tobacco smoke in closely confined places may create a danger to the health of some citizens of this state. In order to protect the health and welfare of those citizens, it is necessary to prohibit smoking in public places except in areas designated as smoking areas.

RCW 70.160.010. The Act acknowledges the scientific evidence that a person who smokes in an enclosed area endangers the health of nonsmokers in the area.

The Act, while prohibiting smoking in "public places", does not regulate smoking in a private enclosed workplace. *See* RCW 70.160.020(2) and .060. Several local ordinances, however, have been enacted to fill this void. King County and the City of Seattle have enacted ordinances prohibiting smoking in the workplace of all publicly owned, rented or leased facilities. King County Code 12.50.030; Seattle Municipal Code 4.04.225. Similarly, Pierce County requires private employers to prohibit smoking in the workplace if an employee requests that smoking be prohibited. Pierce County Code 8.16.090.

Other jurisdictions have considered whether an employer's common law duty to provide a safe workplace extends to the dangers of cigarette smoke. *See Smith v. Western Elec. Co.*, 643 S.W.2d 10, 37 A.L.R.4th 473 (Mo. Ct. App. 1982); *Shimp v. New Jersey Bell Tel. Co.*, 145 N.J. Super. 516, 368 A.2d 408 (1976). In *Shimp*, an employee who worked in an open area where other employees were permitted to smoke sought an injunction to require her employer to prohibit smoking in the area. The court took judicial notice of the toxic nature of cigarette smoke and the health hazards such smoke poses to smokers and nonsmokers alike. The court concluded:

> The evidence is clear and overwhelming. Cigarette smoke contaminates and pollutes the air, creating a health hazard not merely to the smoker but to all those

around her who must rely upon the same air supply. . . . The portion of the population which is especially sensitive to cigarette smoke is so significant that it is reasonable to expect an employer to foresee health consequences and to impose upon him a duty to abate the hazard which causes the discomfort.

*Shimp,* at 530–31. Relying on the employer's affirmative duty to provide a safe work environment, the court granted the injunction and ordered the employer to restrict the smoking of other employees to nonwork areas. *Shimp,* at 530–31.

One commentator states that "[t]he growing trend to restrict smoking is an indication that our society has reached a point in time where the ordinarily prudent employer protects its employees from passive tobacco smoke pursuant to the employer's common law duty." Paolella, at 601–02. Consequently, we hold that an employer's common law duty to provide a safe workplace includes the duty to provide a work environment reasonably free of tobacco smoke pollution.

The common law duty of an employer to provide a workplace reasonably free of tobacco smoke has limits. The detrimental effects of tobacco smoke on nonsmokers have been identified only within the last few decades. Thus, it would be unfair to impose a duty on all employers to take steps to alleviate a problem they were not aware of. Duty therefore must be based on the employer's awareness of the harmful effects of tobacco smoke. Accordingly, a plaintiff has the burden to present evidence to establish that an employer knew, or reasonably should have known, that tobacco smoke is hazardous to the health of nonsmokers in general or to the plaintiff in particular.

An employer has only the limited duty to take the precautions that an ordinarily prudent person in similar circumstances would take to prevent the harm caused by tobacco smoke. In determining whether an employer took reasonable precautions, the trier of fact can take into account the employer's authority, ability, financial

resources and the reasonable means available to control smoking in the workplace. *See Western Elec. Co.,* at 13. Reasonableness must also be judged with reference to the typical employee, not one with a special or particular sensitivity to tobacco smoke. While an employer has a duty to provide a workplace reasonably free of tobacco smoke, it is not required to provide a smoke–free environment for each employee no matter what the cost. However, if an employer is aware of an individual employee's special or particular sensitivity to tobacco smoke, it has a duty to take reasonable steps to accommodate the employee's sensitivities.

Here, McCarthy has the burden to show that during her employment from 1970 to 1980, the State knew, or reasonably should have known, that tobacco smoke was hazardous to the health of nonsmokers in general or to her in particular. She must also prove that the State could have reasonably corrected the situation and failed to do so. Proximate cause also remains an unresolved issue of fact in this case.

McCarthy alleges that the State knew that employees were smoking in her work area and that the smoke was harmful to her health. McCarthy further pleads that the State negligently failed to take corrective measures to control smoking in the workplace. McCarthy states that her exposure to tobacco smoke in the workplace caused her pulmonary disease.

Since the trial court dismissed McCarthy's complaint on a CR 12(b)(6) motion, we must accept all factual allegations and all reasonable inferences therefrom as true. *Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 961, 577 P.2d 580 (1978). Viewed in this light, we find that McCarthy has alleged sufficient facts to state a cause of action for negligence against the State.

## COLLATERAL ESTOPPEL

Finally, the Court of Appeals held that McCarthy could sustain her common law action if she could establish at trial that she does not have an occupational disease. *McCarthy,*

at 131. In so holding, the court overlooked the collateral estoppel effect of the Board's 1981 ruling.

■ The doctrine of collateral estoppel precludes relitigation of issues once litigated and determined between the parties, even though a different claim or cause of action is asserted. *Rains v. State,* 100 Wn.2d 660, 665, 674 P.2d 165 (1983). Here, the parties have litigated, and the Board has made a final determination, as to whether McCarthy's pulmonary disease is an occupational disease within the scope of the Act. Neither McCarthy nor the State appealed the Board's ruling. When the Board's ruling is not appealed, the parties are collaterally estopped from relitigating the Board's ruling in a subsequent action. *Miller v. St. Regis Paper Co.,* 60 Wn.2d 484, 485, 374 P.2d 675 (1962); *Prince v. Saginaw Logging Co.,* 197 Wash. 4, 12, 13, 84 P.2d 397 (1938).

In *Prince,* the Board rejected the employee's claim for workers' compensation benefits on the grounds that there was no industrial injury and that the employee was not in the course of employment at the time of the injury. Neither party appealed this administrative ruling. The employee then sued the employer under common law negligence theories. In defense, the employer argued that the employee's claim was barred by the exclusive remedy provision of the Act. This court held that the Board's ruling was binding on the employer as well as the employee and therefore the employer was bound by the Board's determination that the employee's injuries were not covered by the Act.

The State argues that employees may be less than diligent in establishing coverage if an employer in a subsequent common law action is bound by the Board's decision that an injury or disease is not covered under the Act. The court in *Prince* rejected a similar argument, reasoning that an employer's right to appeal a determination that a claim does not fall under the purview of the Act provides adequate protection against unmerited common law suits. The court stated:

[T]he grievance entitling the employer to appeal was the fact that, by denial of compensation to the employee as being without the act, *the employer was subjected to the hazard of a suit at common law,* a hazard against which the [Act] protected it as a contributor to the industrial insurance fund.

(Italics ours.) *Prince,* at 11; *see* RCW 51.52.060, .110.

When determining the collateral estoppel effect of the Board's ruling, a distinction must be drawn between an occupational disease or injury that is not within the basic coverage of the Act and an occupational disease or injury that is within the basic coverage of the Act, but for which, under the facts of the particular case, no compensation is payable. Under the former, since the disease or injury is not covered at all, the exclusive remedy provisions of the Act do not bar an employee's common law action. *See Miller,* at 485; *Prince,* at 11-13; 2A A. Larson, *Workmen's Compensation* §§ 65.14, 65.40 (1987). Under the latter, the employee's disease or injury is compensable under the Act (*i.e.,* the disease meets the definition of an "occupational disease"), but the employee fails to meet the burden of proof as to some component of the claim. Where the employee's disease or injury is covered by the Act, but the employee fails to establish entitlement to compensation, the exclusive remedy provisions will defeat any common law action. *See Lehtinen v. Weyerhaeuser Co.,* 63 Wn.2d 456, 462, 387 P.2d 760 (1963); *Brown v. Board of Indus. Ins. Appeals,* 11 Wn. App. 790, 794-95, 525 P.2d 274 (1974); 2A A. Larson § 65.53.

The rule that the exclusive remedy provisions of the Act bar a common law action where the claimant fails in an element of proof does not apply where the claimant cannot prove that a particular disease or injury comes within the scope of the Act. 2A A. Larson § 65.53(c) (1987). If an employee cannot prove basic coverage, the Act's exclusive remedy provisions do not preempt a common law cause of action. To hold otherwise would deny a claimant a remedy

under both the state industrial insurance system and the State's tort system.

In a tort action arising out of an employment relationship, the employee has the burden to establish that a claim for workers' compensation was rejected on the ground that the injury or disease was not within the exclusive coverage of the Act. To meet this burden, the court must determine as a matter of law that the plaintiff, under the circumstances, could not show that the Act covered the particular injury or disease.

Neither McCarthy nor the State appealed the Board's 1981 ruling and they are now collaterally estopped from attacking or relitigating the Board's ruling. We are unable to determine the collateral estoppel effect of the Board's 1981 ruling because that ruling is not a part of the record. On remand, the trial court must examine the basis of the Board's ruling denying McCarthy's workers' compensation claim. The burden of proof is on McCarthy. If, as McCarthy has alleged in her complaint, the Board determined that her pulmonary disease was not an occupational disease within the basic coverage of the Act, she can proceed with her common law action. If, on the other hand, the Board determined that she failed to meet her burden of proof as to some aspect of her claim, other than basic coverage, her common law action would be barred by the exclusive remedy provisions of the Act.

## CONCLUSION

McCarthy states in her complaint that her pulmonary disease is not compensable under the basic coverage provisions of the Washington Industrial Insurance Act. If true, the exclusive remedy provisions of the Act will not bar McCarthy's common law negligence action against the State. As her complaint states a cause of action for negligence, the trial court's dismissal under CR 12(b)(6) is reversed and the case is remanded for trial.

CALLOW and GOODLOE, JJ., concur.

BRACHTENBACH, J. (concurring in part, dissenting in part)—I concur only with those portions of the majority entitled Facts, Exclusive Remedy, and Collateral Estoppel.

I dissent from the balance of the majority opinion. Specifically, I dissent from the holding that an employer has a common law duty to provide a working environment reasonably free from tobacco smoke. This is an issue which was not raised in the petition for review, and which was not briefed at any stage of the proceedings.

Not a single authority, whether it be cases or literature, relied upon by the majority was cited by either party. The majority has truly gone off on a frolic and detour of its own making.

The majority's holding may well be correct, but the issue is of great significance to the entire public and private work force of this state. The court and the parties deserve the benefits which would come from adherence to the rules of appellate practice.

It may well be that proper briefing, indeed any briefing, might convince us that this subject is of such great consequence it should be left to the legislative process for solution. It is common knowledge that the Legislature has long struggled with the general subject matter. It should not be resolved by an ex parte, sua sponte fiat holding.

PEARSON, C.J., and UTTER, DOLLIVER, ANDERSEN, and DURHAM, JJ., concur with BRACHTENBACH, J.