[No. 38312-4-I.   Division One.   March 17, 1997.]

EAKKHOUN CHEA, *Respondent*, v. THE MEN'S
WEARHOUSE, INC., *Appellant*.

---

[12]*Fussell*, 84 Wn. App. at 128 (citing *State v. Baeza*, 100 Wn.2d 487, 490, 670 P.2d 646 (1983)).

[13]*Fussell*, 84 Wn. App. at 128-29.

406

*James R. Dickens, Susan K. Stahfeld,* and *Miller, Nash, Wiener, Hager & Carlsen,* for appellant.

*Abraham A. Arditi,* for respondent.

BAKER, C.J. — The Men's Wearhouse, Inc. (MWI) asks this court to determine whether negligent infliction of emotional distress is a cognizable claim in a workplace dispute or whether such a claim is barred by the exclusive remedy provisions of RCW Title 51, the Industrial Insurance Act (IIA). We hold that negligent infliction of emotional distress is a cognizable claim in the workplace when it does not arise solely from racial remarks and does not result from an employer's disciplinary acts or its response to a personality dispute. Because no determination was made in this case whether the incident supporting Eakkhoun Chea's claim was a disciplinary incident and because the evidence was sufficient for the jury to find the claim was not based solely upon racial remarks or employer discipline, we affirm the jury verdict. Moreover, because MWI

did not appeal the administrative determination that Chea experienced no injury compensable under the IIA, MWI cannot now assert that the IIA bars Chea's recovery.[1]

## FACTS

Chea is a Cambodian of Chinese descent, who fled the Khmer Rouge camps and emigrated to the United States. MWI hired Chea as a clothing consultant. Chea discussed his experiences in the Khmer Rouge camps during his interviews with MWI's district and regional managers.

Members of MWI's management and other employees frequently made negative comments both about Chea's short stature and about Asians.[2] Chea's manager admitted that racial remarks were common in MWI stores and that he made racial remarks and comments about Chea's height. Chea complained to this manager about the remarks. MWI's district manager also heard comments about "your people" and Chea's height while she was in the store.

The pivotal event for Chea occurred on September 18, 1992, when regional manager Marty Morris reprimanded him. After some customers left the store without making a purchase, Morris approached Chea and asked what happened. When Chea said he did not know it was his "up" (turn to sell), Morris grabbed him by the lapels and said, "I don't give a fuck whose fucking up it is, I want a customer taken care of."[3] Morris admitted angrily approaching Chea, flipping up his lapels, and probably using foul language. Morris told the district manager that he grabbed Chea. The store's head tailor saw Morris' hands on Chea's

---

[1]Because we affirm the jury's negligent infliction of emotional distress award, it is not necessary for us to reach MWI's claim that the award of attorney fees was improper. Nor is it necessary for us to address Chea's cross-appeal on the retaliation instruction, which was contingent on the outcome of MWI's appeal. We therefore decline to address these issues.

[2]Any other racial remarks are not relevant to this appeal.

[3]Report of Proceedings on April 4, 1995, at 55.

lapel. Chea admitted that Morris did not make any racial remarks on this occasion.

Chea filed a worker's compensation claim with the Department of Labor and Industries, claiming mental and emotional injury from the Morris incident; however, the Department denied the claim, finding that Chea had no specific injury or occupational disease. Neither MWI nor Chea appealed this determination.

Chea also filed a complaint with the Equal Employment Opportunity Commission, alleging racial harassment and wrongful denial of promotion.[4] MWI conducted an investigation. It determined that the kidding and jokes were in bad taste and should stop. It also determined that Morris' reprimand was proper, but that he should not have touched Chea. The comments about Chea's height and race continued. In December 1992 Chea transferred to another MWI store.

After the Morris incident, Chea began to have episodes where his heart would race, he felt dizzy, weak, and nauseous, and he had trouble sleeping. Chea sought medical and psychological treatment. Chea told his doctors about the Morris incident. The doctors determined that Chea suffered from tachycardia, hyperventilation syndrome, panic attacks, depression, and adjustment disorder with anxiety.

Chea then filed suit against MWI alleging (1) harassment, retaliation, and denial of a promotion based on his race or national origin, and (2) negligent infliction of emotional distress.[5] The latter claim incorporated all of the allegations supporting the first claim and added an allegation regarding the Morris incident.

Before trial MWI argued that negligent infliction of emotional distress cannot exist in an employment context

---

[4]Chea filed four subsequent EEOC complaints alleging retaliation arising from later incidents not relevant to this appeal.

[5]Chea amended this complaint to add retaliation claims for the later incidents mentioned above.

and that the IIA provided Chea's exclusive remedy. The trial court denied the motion as untimely. MWI renewed the motion at the close of Chea's case, arguing that an employee cannot bring an emotional distress claim against an employer for what essentially was a workplace personality dispute.[6] Chea responded that his claim was based on both the Morris incident and all of the previous nonracial statements. The trial court reserved its ruling.

MWI renewed the motion at the end of the evidence. The trial court denied the motion, noting that it found a conflict in the case law regarding whether such a claim can be brought in an employment context. The court reasoned that, under case law from this division,[7] the claim was cognizable in the workplace when "the dominant feature of the tort was not personal injury[,] but intangible emotional damage."[8]

Before the trial court instructed the jury, MWI objected generally to the giving of an instruction on the emotional distress claim, but not to its content. MWI did not, however, propose an instruction that evidence of employer disciplinary decisions could not be considered in an emotional distress claim. MWI did not propose any instruction segregating the evidence that the jury should consider in support of each claim, nor did it except to the verdict form.

In his closing argument, Chea argued that all acts implicating race should be considered in the racial harassment claim and that all nonracial remarks should be considered as part of the emotional distress claim. Chea also argued that the Morris incident should be considered in the racial harassment claim to the extent that it involved race and in the emotional distress claim to the

---

[6]*See Bishop v. State*, 77 Wn. App. 228, 235, 889 P.2d 959 (1995) (holding that employers have no duty to avoid inadvertent infliction of emotional distress when responding to workplace personality disputes).

[7]*Wheeler v. Catholic Archdiocese of Seattle*, 65 Wn. App. 552, 568, 829 P.2d 196 (1992), *reversed in part on other grounds*, 124 Wn.2d 634 (1994).

[8]Report of Proceedings on April 13, 1995, at 5.

extent that it did not involve race. Chea asked for a lump sum award for emotional distress damages without separating his request into damages for the racial and nonracial claims. MWI's closing argument clearly distinguished the incidents relevant to the harassment claim from those relevant to the emotional distress claim, and explained which incidents should be considered under each section of the special verdict form.

The jury awarded Chea $45,000 for racial harassment, $27,000 for the emotional distress claim, and $22,500 punitive damages for racial harassment. The jury found against Chea on the retaliation and failure to promote claims. The special verdict form does not indicate which acts the jury considered for each claim of emotional distress. The trial court awarded Chea $89,343.40 in costs and fees.[9]

After trial MWI moved for judgment as a matter of law on the negligent infliction of emotional distress claim. MWI argued that the damage award for that claim duplicated the racial harassment recovery because the same incidents supported each claim. The trial court denied the motion.

## ANALYSIS

MWI appeals the jury's award for negligent infliction of emotional distress, arguing that such a claim cannot arise from employment and is barred by the exclusive remedy provisions of the IIA. MWI asserts that the award permitted Chea to recover under two theories for emotional distress arising from the same acts. Chea seeks attorney fees on appeal.

■ Whether negligent infliction of emotional distress is a cognizable claim in an employment context or is barred

---

[9]MWI objected to the award of fees and costs, arguing that without the award for negligent infliction of emotional distress, which it argued was a double recovery, the remaining award was less than the $75,000 offer it made before trial and, therefore, no costs or fees could be awarded.

by the exclusive remedy provisions of the IIA is a question of law that we review de novo.[10]

MWI first asserts that the claim cannot exist in an employment context because it would open the floodgates of litigation against employers for every imagined slight. MWI argues that this would unreasonably burden employers and would be contrary to established precedent declining to recognize such claims arising from employment.[11] MWI argues that under *Lords*, no such claim can arise from a disciplinary action such as the Morris incident. In addition, MWI maintains that the Morris "disciplinary" incident and the "short" jokes fail to support the claim in an employment context. MWI's argument fails for two reasons.

■■ First, a negligent infliction of emotional distress claim can exist in an employment context. We have recognized the claim arising in that context when it was not covered under the IIA's exclusivity provisions and the dominant feature of the negligence claim was the emotional injury.[12] We recognize that an employer must be accorded latitude in making decisions regarding employee discipline. This does not mean, however, that an employer cannot be held responsible when its negligent acts injure an employee, and such acts are not in the nature of employee discipline and do not give rise to a cognizable IIA claim.

We find no conflict between our decision recognizing this type of claim in an employment setting in *Wheeler*,

---

[10]*In re Electric Lightwave, Inc.*, 123 Wn.2d 530, 536, 869 P.2d 1045 (1994).

[11]*Lords v. Northern Automotive Corp.*, 75 Wn. App. 589, 595, 881 P.2d 256 (1994) (no negligent infliction of emotional distress for termination of at-will employee unless termination violated public policy); *see Bishop*, 77 Wn. App. at 234-35 (no negligent infliction of emotional distress for employer's decisions in handling dispute between employees); *see also Johnson v. Department of Social & Health Servs.*, 80 Wn. App. 212, 230-31, 907 P.2d 1223 (1996) (recognizing no duty to avoid negligent infliction of emotional distress when responding to employee disputes, affirming dismissal because sole factual basis for emotional distress claim was discrimination).

[12]*Wheeler*, 65 Wn. App. at 568; *see also Goodman v. Boeing Co.*, 127 Wn.2d 401, 407, 899 P.2d 1265 (1995).

and the *Bishop* and *Johnson* decisions.[13] We agree with the *Bishop* court's holding that an employer's disciplinary decision in response to a workplace personality dispute cannot be the basis for such a claim.[14] Moreover, we agree with the *Johnson* court's holding that a separate claim for emotional distress is not compensable when the only factual basis for the emotional distress was the discrimination claim.[15] However, neither of those cases applies to the facts here.

MWI did not argue below that the Morris incident was a disciplinary incident and, therefore, improper to consider as a basis for a claim of negligent infliction of emotional distress. Nor did it propose a special verdict form segregating the incidents the jury considered under each claim. MWI alludes to the Morris incident as a discipline decision or a workplace personality dispute; however, the jury made no such determination. The record contains adequate evidence for the jury to have found that the Morris incident was not employer discipline when Morris grabbed Chea and also that the emotional distress claim was based both on that incident and all of the nonracial remarks that were directed at Chea.[16] Because sufficient evidence supports the jury's verdict and MWI did not adequately raise the employer discipline argument below, we affirm the judgment entered on the jury's award for negligent infliction of emotional distress.

In a related argument, MWI asserts that Chea's recovery for this claim was based upon the same acts as his recovery for racial discrimination, and thus was an improper double recovery. MWI asserts that Chea abandoned his separate emotional distress claim during closing argument when he argued that the events supporting that claim and the racial discrimination claim overlapped.

---

[13]*Wheeler*, 65 Wn. App. at 568.

[14]*Bishop*, 77 Wn. App. at 235.

[15]*Johnson*, 80 Wn. App. at 230-31.

[16]*Cf. Wheeler*, 124 Wn.2d at 642 (appellate court will not dissect a general verdict to determine which items are represented in each part).

While we will not permit double recovery under different legal theories, Chea's two claims do not overlap. Chea sought damages for the emotional distress caused by all episodes of intentional harassment based upon his race, and he also sought damages for the emotional distress caused by the nonracial aspect of the Morris incident and the nonracial comments. Chea argued that the Morris incident may have had some racial undertones that should be considered in the harassment claim, but he also asked for separate damages for all nonracial aspects of the case. While Chea did not clearly distinguish the racial from the nonracial aspects of the case, he did not clearly waive or abandon his emotional distress claim.

■ Furthermore, MWI's closing argument clearly separated the racial and nonracial aspects of the case, segregating the evidence the jury should consider in deciding the different claims on the special verdict form. Based upon the manner in which the issues were submitted to the jury and the nonspecific form of the verdict, we cannot conclude that Chea obtained a double recovery.

· ■ MWI also argues that Chea's claim is barred by the IIA exclusivity provisions. We disagree for two reasons. First, the IIA does not abolish a common law remedy unless it provides a substitute remedy.[17] The IIA does not compensate for negligent infliction of emotional distress claims arising from workplace harassment, including verbal harassment or discrimination, so such claims are not barred by the IIA exclusivity provisions.[18] Chea's claimed symptoms arising from the Morris verbal and physical assault and the verbal taunts, which L&I determined not to be an injury or occupational disease and, therefore, not compensable, are not barred by the IIA

---

[17]*Goodman*, 127 Wn.2d at 407 (citing *McCarthy v. Department of Social & Health Servs.*, 110 Wn.2d 812, 817, 759 P.2d 351 (1988)).

[18]*Goodman* states that the IIA does not compensate for "discrimination or verbal harassment," indicating that verbal harassment is separate from discrimination. *Goodman*, 127 Wn.2d at 407; *see also Wheeler*, 65 Wn. App. at 565-68.

exclusivity provisions. Second, because MWI did not appeal L&I's determination that Chea did not suffer from a compensable injury or occupational disease, it cannot now maintain that Chea's claim is barred by the IIA.[19]

Chea seeks attorney fees on appeal, arguing that even though the negligent infliction of emotional distress claim provides no basis for a fee award, he had to respond to this appeal to preserve the fee award from the racial harassment claim below. While this may be true, Chea cites no authority supporting the proposition that fees are awardable on appeal from a non-fee issue based upon the statutory fee provisions of the unappealed issues. We deny Chea's request for attorney fees.

Affirmed.

KENNEDY and AGID, JJ., concur.

After modification, further reconsideration denied July 28, 1997.

Review denied at 134 Wn.2d 1002 (1998).

---

[19]*See Wheeler,* 65 Wn. App. at 568. MWI's reliance on *Birklid v. Boeing Co.,* 127 Wn.2d 853, 868-73, 904 P.2d 278 (1995), is misplaced because, even if MWI correctly interprets *Birklid* to hold that the IIA only covers claims for intentional emotional torts, the IIA does not abolish common law remedies when it does not provide a substitute remedy. *See Goodman,* 127 Wn.2d at 407.