[No. 15504-8-III.    Division Three.    December 2, 1997.]

ANGELES HENSON, ET AL., *Appellants*, v. TATE CRISP, ET AL., *Respondents*.

*W. Russell Van Camp* and *Dustin D. Deissner* of *W.R. Van Camp, P.C.*, for appellants.

*James B. King* of *Keefe, King & Bowman, P.S.*, for respondents.

SWEENEY, C.J. — Angeles Henson suffered emotional distress when Tate Crisp, the Payless Drug Store assistant manager, pointed and "fired" a toy gun at her while at work. The Department of Labor and Industries accepted her work-related injury claim and paid time-loss benefits. She brought this action against Mr. Crisp directly and Payless Drug Stores Northwest, Inc., their employer, vicariously under the intentional injury exclusion provisions of RCW 51.24.020:

If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

After hearing her evidence, the court granted judgment for Mr. Crisp and Payless as a matter of law. The court did not hear sufficient evidence of an intentional injury to submit the question to the jury. Ms. Henson appeals the judgment. We agree with the trial court. Mr. Crisp's conduct does not rise to the level of intentional conduct and we accordingly affirm.

## FACTS

Ms. Henson worked at Payless under Mr. Crisp for 11 months. Her relations with him were cordial and professional. Mr. Crisp promoted her. Ms. Henson had no reason to believe he had any wish to hurt her. She noticed nothing out of the ordinary about Mr. Crisp on the fateful day. But Ms. Henson feared guns and violence. Her brother had been injured in a knife attack a couple of years before. And a shoplifter had recently been apprehended in the store with a gun in her purse.

When she returned from her morning break, she found a realistic-looking toy gun of a kind sold in the store on the counter of her workstation. She asked her immediate supervisor, Corrine Haney, why it was there and what she should do with it. Ms. Haney sent for Mr. Crisp who told them he had put it there. Mr. Crisp then picked up the toy gun, pointed it at Ms. Henson, and, laughing, cocked and "fired" it. Ms. Haney heard him say, "It's a toy," as he did this; Ms. Henson did not. She felt pain in her chest and fell to her knees.

Ms. Henson was taken to a hospital, treated for her nervous distress and released. Mr. Crisp called her at home

and apologized. He told her it was a joke and he meant no harm. Ms. Henson was not persuaded. She filed a claim with the Department of Labor and Industries and received time-loss benefits for two and a half months. She experienced sleeplessness, nightmares and fear. She also received the care of a psychologist or psychiatrist for a year.

Ms. Henson first sued Mr. Crisp and Payless on a theory of negligence. At trial, she withdrew the negligence claim because it was barred by the Industrial Insurance Act, RCW 51.04.010. She substituted instead a claim of intentional infliction of emotional distress. The defendants pleaded the exclusive remedy provisions of RCW 51, which bar independent claims against employers for work-related injuries.

The jury heard testimony from Ms. Haney and Ms. Henson during the trial. At the close of Ms. Henson's case, the defense moved under CR 50(a) for judgment as a matter of law. The motion was granted. Ms. Henson's motion for reconsideration was denied. She appeals.

## DISCUSSION

■■ In granting judgment as a matter of law, a trial court must accept as true the nonmoving party's evidence and draw all inferences favorable to that party. *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 335, 779 P.2d 249 (1989). On appeal, we review the evidence in the light most favorable to the aggrieved party and determine whether the trial court correctly applied the law. *Id.*

Ms. Henson's theory of the case is as follows: Mr. Crisp concedes he intentionally pointed and "fired" the toy gun at her. He must have intended to produce some effect. The effect he intended to produce was a mild startled response. Ms. Henson actually experienced severe emotional distress. Therefore, Mr. Crisp intended to produce the *kind* of injury Ms. Henson suffered. The fact he did not intend the *extent* of the injury is immaterial. If Mr. Crisp intended to produce the injury, Ms. Henson has a cause of action under RCW 51.24.020.

Her argument is contrary to established case law.

Washington courts have recently expanded the statutory definition of "deliberate intention" to include willful disregard of actual knowledge an injury is certain to occur. In *Birklid v. Boeing Co.*, 127 Wn.2d 853, 863, 904 P.2d 278 (1995) and *Baker v. Schatz*, 80 Wn. App. 775, 781, 912 P.2d 501, *review denied*, 129 Wn.2d 1031 (1996), the employer was held to have intentionally injured its workers when it knew from prior information and experience that exposure to a chemical compound would cause illness, observed the employees in fact becoming ill, and nevertheless continued the deliberate exposure. The Supreme Court held that this conduct went beyond gross negligence and constituted willful disregard of actual knowledge. *Birklid*, 127 Wn.2d at 863. But it is the injury, not merely the conduct, which must be intentional. *Id.* at 861; *Foster v. Allsop Automatic, Inc.*, 86 Wn.2d 579, 584, 547 P.2d 856 (1976). Disregard of a known risk of harm is insufficient; the certainty of the actual harm must be known and ignored. *Birklid*, 127 Wn.2d at 865. Prior to *Birklid*, the only contested case of intentional injury to be affirmed in the entire history of the INDUSTRIAL INSURANCE ACT involved the brutal and deliberate physical assault of a worker by a supervisor. *Id.* at 861; *Perry v. Beverage*, 121 Wash. 652, 209 P. 1102, 214 P. 146 (1922). *Birklid* expands the definition of intentional injury beyond assault and battery, but not enough to include this claim. *Birklid*, 127 Wn.2d at 862-63.

Ms. Henson presented no evidence Mr. Crisp had actual knowledge she would suffer prolonged and incapacitating emotional distress in response to his prank. He was guilty at most of negligence which, however gross, does not rise to the level of intent under RCW 51.24.020. *Birklid*, 127 Wn.2d at 863.

If a jury accepted Ms. Henson's statement of the facts and drew all inferences therefrom in her favor, it would find she was particularly susceptible to a fear of guns. She believed the toy gun was real. She believed she had been

shot. And Mr. Crisp recklessly disregarded a substantial risk that his conduct would cause her extreme distress. It could not find Mr. Crisp was aware of her particular sensitivity, that he had any reason to wish her harm or had ever previously manifested ill will or harmful conduct toward her. At most, a reasonable jury could find gross negligence, not the sort of willful disregard of certain injury sufficient to overcome the independent action preclusion of the Industrial Insurance Act.

Since a reading of the record in the most generous light possible to Ms. Henson does not show Mr. Crisp deliberately intended to injure her, judgment as a matter of law for Mr. Crisp and Payless was proper. RCW 51.24.020.

Following oral argument, Ms. Henson filed a statement of additional authorities (RAP 10.8), citing *Chea v. Men's Wearhouse, Inc.*, 85 Wn. App. 405, 932 P.2d 1261, *petition for review filed* (Wash. Aug. 26, 1997) (No. 65901-0), and *Goad v. Hambridge*, 85 Wn. App. 98, 931 P.2d 200, *review denied*, 132 Wn.2d 1010 (1997).[1]

In *Chea*, an employee sued his employer for negligent infliction of emotional distress and harassment based on race or national origin. *Chea*, 85 Wn. App. at 409. The employer appealed an adverse jury verdict arguing, in part, that Mr. Chea's claim was barred by the Industrial Insurance Act's exclusivity provision. The court dismissed that argument noting that the Industrial Insurance Act did not abolish common-law remedies—it simply provided a "substitute remedy." Since Mr. Chea's claim for negligent infliction of emotional distress was not compensable under the Act, it was not barred by the Act's exclusivity provisions. *Chea*, 85 Wn. App. at 414. The Department of Labor and Industries had previously concluded that the injury was not compensable. Neither Mr. Chea nor his employer appealed that determination. *Id.* at 409. Here, Ms. Henson filed and the Department accepted and then paid her claim for emotional injury resulting from this incident.

---

[1] Her case does not benefit from these decisions.

*Goad* supports the position of Mr. Crisp and Payless. In *Goad*, we distinguished *Birklid*, and in doing so denied Mr. Goad's civil suit against his employer because he "presented no evidence that Springdale [his employer] knew Mr. Goad's injury was certain to occur." *Goad*, 85 Wn. App. at 104. And that is precisely the case here.

Affirmed.

SCHULTHEIS and KURTZ, JJ., concur.

Review denied at 135 Wn.2d 1010 (1998).