Nanette JENSEN, Plaintiff–Appellant,

v.

**GTE NORTHWEST, INC.,**
Defendant–Appellee.

No. 98–35772.
D.C. No. CV–96–1481–BJR.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 2000.

Decided April 13, 2001.

Before B. FLETCHER and FISHER, Circuit Judges, and SCHWARZER, District Judge.[1]

## MEMORANDUM[2]

From 1992 until 1995, plaintiff-appellant Nanette Jensen worked as a customer service representative for defendant-appellee GTE Northwest, Inc. ("GTE"). In early 1994, Jensen began suffering severe back pain due to a degenerative disc disease, a form of arthritis. She sought a series of workstation modifications, medical leave, and part-time work options from GTE in order to accommodate her disability. Jensen eventually brought suit in state court alleging that GTE failed to reasonably accommodate her disability in violation of the Americans with Disabilities Act ("ADA") and the Washington Law Against Discrimination ("WLAD"). She also brought claims of negligent infliction of emotional distress and the intentional tort of outrage. Following removal, the district court granted summary judgment in favor of GTE on all claims. We have jurisdiction pursuant to 28 U.S.C. § 1291. Jensen's claims were dismissed on summary judg-

---

1. The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

2. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Cir. R. 36–3.

ment; therefore, we must view the evidence in the light most favorable to her and ascertain whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for Jensen. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because we hold that there are no genuine issues of material fact, we affirm.

## I. ADA and WLAD

■■■ In this appeal, GTE does not contest that it is a covered employer or that Jensen was an otherwise qualified individual with a disability. Therefore, with respect to her ADA and WLAD claims, the only issue we must consider is whether GTE made reasonable accommodations with regard to Jensen's disability. Both the ADA, 42 U.S.C. § 12112(a), (b)(5)(A), and the WLAD, Wash. Admin. Code § 162–22–075, require an employer to make reasonable accommodations to an employee's disability unless the employer can demonstrate that the accommodation would impose an undue hardship on its business. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105 (9th Cir.2000) (en banc); *Doe v. Boeing Co.*, 121 Wash.2d 8, 846 P.2d 531 (Wash.1993) (en banc). Crucial to the reasonable accommodation determination is an interactive process by which both the employer and the employee must make reasonable efforts and exercise good faith. *Barnett*, 228 F.3d at 1111. So long as the accommodation offered by the employer is reasonable, neither the ADA nor the WLAD require an employer to provide the precise accommodation that the employee requests. *Sharpe v. American Telephone & Telegraph Co.*, 66 F.3d 1045, 1050 (9th Cir.1995) (discussing both Washington state and federal law on this point).

Viewing the evidence in the light most favorable to Jensen, we hold that GTE participated in the interactive process in good faith and made reasonable accommodations that largely conformed to Jensen's specific requests within reasonable periods of time. In April of 1994, Jensen requested a modified workstation so that she could stand while working. Jensen's supervisor informed her that she needed a note from her physician describing her workplace needs. Upon supplying her supervisor with the medical documentation, GTE almost immediately supplied Jensen with the requested standing workstation. Still uncomfortable with this workstation arrangement, Jensen next requested a high orthopedic chair to use at her "standing" station. Within approximately one month, and following some back and forth with Jensen's doctor and GTE's safety supervisor, GTE provided Jensen with the high orthopedic chair she requested. During this same time period, Jensen was permitted to take additional time off for doctor's appointments, chiropractor and physical therapy sessions.

■■■ Jensen made no complaints to GTE for approximately one year after being provided the workplace modifications she had sought. However, at a week long training session in May of 1995, Jensen was not provided the orthopedic chair accommodation she had requested. Although this was irresponsible on GTE's part, upon learning that the accommodation had not been made, Jensen did not seek to be excused from the training, nor did she make further requests for accommodation for the week long training period. In light of the very short duration of the training class, we find insufficient evidence of bad faith or unreasonableness on GTE's part.

In May 1995, Jensen was relocated to a new facility. Rather than providing Jensen with the same workstation modification that had proven successful previously (a high drafting desk and high orthopedic chair), GTE provided her with a sit/stand

workstation, which allowed her to adjust her computer height electronically. She was also provided with a standard height, orthopedic chair to use while sitting. Jensen soon complained that she was experiencing pain using this workstation. GTE's response to Jensen's complaint appears to us a bit rigid and bureaucratic: She was told that only lead customer representatives were allowed to have high chairs. Nevertheless, approximately one month later when Jensen again complained to her supervisor, GTE continued to take part in the interactive process. Because GTE thought that the adjustable height workstation and low orthopedic chair met Jensen's medical needs as it understood them, GTE asked for additional documentation from her doctor. Within six days of receiving further medical documentation, Jensen was provided with the high orthopedic chair she requested.[3]

Finally, in August of 1995, four discs in Jensen's neck ruptured. She was in severe pain and took paid medical leave from August 2 until August 31. Upon her return, Jensen had difficulty bending her neck downward and requested a slanted writing station. On her first day back at work, she met with her supervisor and a GTE safety administrator. They discussed slanted desk accommodation and took measurements of her work station. Following this and because of continuing pain she was experiencing, Jensen took paid medical leave from September 12 until September 25, 1995. When she returned, GTE had heightened her desk as requested, but had not provided a slanted desk. The following day, Jensen was given a computer monitor stand that could be adjusted to create a slanted writing surface. Thus, at this point, Jensen had all that she requested: a high orthopedic chair, a specially equipped sit/stand workstation with a monitor and keyboard and table section that could be moved electronically to her individual standing or sitting height, a stationary desk that had been custom built to her height, and an adjustable desktop pedestal with a slanted surface.

■ These undisputed facts portray GTE as fully and in good faith engaged in the interactive process as required by the ADA and WLAD. Although occasionally a bit bureaucratic in their responses, GTE provided Jensen with paid medical leave and part-time work schedule upon request; immediately discussed adjusted workplace options with her; provided reasonable and tailored accommodation for her disability in a fairly timely fashion; and ultimately (within a matter of days or weeks) supplied Jensen with all that she requested. Therefore, we hold that Jensen fails to demonstrate a genuine issue of material fact that would lead a reasonable jury to conclude that GTE acted in an unreasonable or bad-faith manner.

## II.  Negligent Infliction of Emotional Distress

In dismissing Jensen's negligent infliction of emotional distress claim, the district court relied on *Chea v. Men's Warehouse Inc.*, 85 Wash.App. 405, 932 P.2d 1261, 1265 (Wash.Ct.App.1997), and held that Jensen's claim depends on the same factual basis as her discrimination claim. *Chea* holds that a separate claim for emotional distress is not *compensable* when the only factual basis for the emotional distress is the discrimination claim. *Id.* at 1265.

---

**3.**  The chair was provided to her by a coworker with the permission of a different supervisor.

The district court's reliance on *Chea* was inappropriate. In *Chea*, a jury awarded the plaintiff damages based on both a race discrimination claim and negligent infliction of emotional distress claim. *Id.* at 1264. The court's analysis in *Chea* is focused entirely on the prohibition against *double recovery* under different legal theories. *Id.* at 1265 ("[W]e will not permit double recovery under different legal theories."). Because the district court in the instant case granted GTE's summary judgment motion on the ADA and WLAD claims, reliance on *Chea* is inapposite. Since the ADA and WLAD claims have been dismissed, double recovery under the negligent infliction of emotional distress claim is impossible.

■ Nevertheless, a district court's grant of summary judgment may be affirmed if it is supported by any ground in the record, whether or not the district court relied on that ground. *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997). Here, Jensen's negligent infliction of emotional distress claim can be dismissed because she does not raise a genuine issue of material fact.

■ Under Washington law, an employee can establish a claim of negligent infliction of emotional distress by showing: (1) that her employer's negligent acts injured her; (2) the acts were not a workplace dispute or employee discipline; (3) the injury is not covered by the Industrial Insurance Act, and (4) the dominant feature of the negligence claim was the emotional injury. *See Snyder v. Medical Service Corp. of Eastern Washington*, 98 Wash. App. 315, 988 P.2d 1023, 1028 (Wash.Ct. App.1999).

■ The record does not support a showing of either element (1) or (2) listed above. As discussed above in Section I, GTE provided Jensen with reasonable accommodation. Since there is not a genuine issue as to GTE's reasonableness, it follows that there is not a genuine issue as to whether GTE was negligent. Furthermore, neither Jensen's complaint nor her supporting documents assert any emotional injury, let alone that emotional injury is the dominant feature.

We therefore affirm the district court's dismissal of this claim on this separate ground.

### III. Outrage

■ Jensen alleges that GTE's actions are sufficient to support a claim of outrage, especially in light of the power differential between employer and employee. Under Washington law, in order to state a claim of outrage, Jensen must demonstrate conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Dicomes v. State of Washington*, 113 Wash.2d 612, 782 P.2d 1002, 1012 (Wash. 1989) (quoting *Grimsby v. Samson*, 85 Wash.2d 52, 530 P.2d 291 (Wash.1975)). Jensen fails to allege any facts that satisfy this high standard. Although the question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Id.* The record demonstrates that reasonable minds could not so differ in the instant case.

Therefore, as to all issues we AFFIRM the district court's grant of summary judgment.

AFFIRMED.